# Florence I. Hill, Appellant, *v.* Pennsylvania Railroad Company.

*Negligence—Death—Release of damages—Widow—Acts of April* 15, 1851, *and April* 26, 1855.

Under the acts of April 15, 1851, P. L. 674, and April 26, 1855, P. L. 309, a widow has no independent right of action for the death of her husband caused by the negligence or default of another which the husband could not release in his lifetime, after the injury and before his death.

Argued May 26, 1896. Appeal, No. 385, Oct. T., 1896, by plaintiff, from judgment of C. P. Northumberland Co., Sept. T., 1892, No. 465, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, DEAN, and FELL, JJ. Affirmed.

Trespass for death of plaintiff's husband. Before SAVIDGE, P. J.

At the trial defendant offered release dated the 17th day of November, 1890, signed, sealed and delivered by J. Nevin Hill, the husband of the plaintiff, by which, for the sum of $350, he remised, released, and forever quitclaimed the defendant company from damages. This release was offered for the purpose of establishing the fact that he released the defendant company from all damages, and in bar of the plaintiff's action.

Plaintiff's counsel objected to the offer for the reason that by the act of assembly, approved the 26th day of April, 1855, P. L. 309, the legislature of Pennsylvania conferred upon the widow of a man, for any injury causing death, a right of action which cannot be divested by the release of the person injured, which cause of action is separate and independent of the cause of action under the act of 1851, P. L. 675, section 18. And further if the jury believe from the evidence that his death resulted from these injuries, that this release would not be a bar to her recovery for the injuries received under these acts of assembly.

The objections were overruled, evidence admitted and bills sealed. [1]

The release was as follows:

"*Know All Men by these Presents:*

" That I, J. Nevin Hill, of Sunbury, Pennsylvania, in consideration of the sum of $350, lawful money to me paid by the Pennsylvania Railroad Company, at the time of the sealing and delivery hereof, the receipt whereof is hereby acknowledged, have remised, released, and forever quit-claimed and discharged, and by these presents do remise, release, and forever quit-claim and discharge unto the said, the Pennsylvania Railroad Company and their successors, all claims and demands which I have, or can or may have, against the said the Pennsylvania Railroad Company, or their successors, for or by reason of any matter, cause, or thing whatsoever, and more especially by reason of an accident to train number 9 at New Florence, Pa., Friday, November 14th, in which I was a passenger, the above to include all claim for personal injury, loss of time and damage to personal effects.

" And the Pennsylvania Railroad Company, in paying the said sum of money, do so in compromise of the said claim and demand above released, not admitting any liability on account of the same.

" Witness my hand and seal the 17th day of November, 1890.

" Sealed and delivered in the        (Signed)
    presence of us.
    JOHN R. HAMILTON.        J. NEVIN HILL"    [SEAL.]

The court charged in part as follows:

[The act of 1855, gives a right of action to the surviving widow, and had there been no act on the part of Mr. Hill during his lifetime releasing the company from liability because of their negligence in the running of the train, there would have been an undoubted right in the widow to recover a verdict at your hands in this suit. Mr. Hill, however, on the 17th day of November, 1890, compromised and settled with the company for the injury done him by reason of their negligence and upon that date executed a release, which has been offered in evidence, by which he "remised, released, and forever quit-claimed and discharged, and by these presents do remise, release, and forever quit-claim and discharge, unto the said, the Pennsylvania Railroad Company, and their successors, all claims and demands

which I have, or can or may have, against the said, the Penn
sylvania Railroad Company, or their successors, for or by reason
of any matter, cause, or thing whatsoever, and more especially
by reason of an accident to train No. 9 at New Florence, Pa.,
Friday, November 14, in which I was a passenger, the above to
include all claim for personal injury, loss of time and damage
to personal effects."

This release was for a valuable consideration. The company
paid him at the time, according to the release, $350, and there
is no contention that there was any fraud or misrepresentation,
or bad faith on the part of the company in the procuring of this
paper. It is contended by the plaintiff that, notwithstanding
this settlement was made by Mr. Hill in his lifetime, the widow
may maintain the present action, or, in other words, that, in a
case like this, there are two causes of action, so to speak, by
reason of the negligent act of this defendant—one to the hus-
band for the injury sustained by him, the pain and suffering,
and for the loss of time and the expense incurred endeavoring
to be cured, etc., and another to the widow and children for the
loss of service and support of the husband. It seems to me
that this can hardly be.] [2]

[The acts of 1851 and 1855 resemble closely, in their essen-
tial features, the English statute commonly known as the Lord
CAMPBELL act, and that has been construed in a case almost
identical with the one now under consideration, namely, Read v.
The Great Eastern Railway Company, by the Court of Queen's
Bench, Law Reports, 3 Queen's Bench, 555. It is there rea-
soned by the court that there is but one cause of action which
would survive, it is true, where death occurred, provided there
had not been a settlement by the party injured, or a previous
suit brought by him and judgment obtained. On that authority
I feel constrained, for the present, to hold that the settlement
by Mr. Hill in his lifetime constitutes a bar to the present
action.] [3]

I therefore affirm the defendant's points and instruct you to
return your verdict in favor of the defendant. [4]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1) ruling on evidence, quoting the
bill of exception; (2-4) above instructions, quoting them.

*C. M. Clement* and *S. P. Wolverton*, for appellant.—The competency of the legislature to create such new cause of action as was created by the acts of 1851 and 1855 would seem to be unquestioned: Fink v. Garman, 40 Pa. 103; Penna. R. R. Co. v. Zebe, 33 Pa. 328; Birch v. Ry., 165 Pa. 345; Mann v. Wieand, 4 W. N. C. 6. When the law created this right of action against the plaintiff in error it gave it to the defendant in error. It is true the death of her husband was an act precedent to her right of action; but so was the negligence of the plaintiff in error. The two uniting created the cause of action and gave it to the widow. It had no existence prior to that time: Books v. Danville, 95 Pa. 158.

This question has been considered in other states having like statutes: Belding v. Black, Hill & Ft. Pierre R. R., 52 Am. & Eng. R. R. Cases, p. 624.

The first section of the Lord CAMPBELL act is predicated entirely upon the fact that the party injured could have maintained an action if living, and the action is as awarded solely upon this provision, hence the ruling of the English court in Read v. Great Eastern Ry. Co., L. R. 3 Q. B. 555 (1868), is easily understood, for manifestly after release given the party injured could not, under the proviso in the act, maintain an action. For the like reason it has been so held in New York, where the statute is almost a transcript of the British act, but this ruling has been questioned in later New York cases: Schlichting v. Wintgen, 25 Hun (N. Y.), 626. It is however the law of Pennsylvania that the right of action of the widow is one the husband never had nor never could have: Fink v. Garman, 40 Pa. 103.

The fact that deceased had instituted suit to recover damages for injuries sustained while crossing defendant's railroad track, which was pending at the time of his death, is no bar to an action by the widow and children to recover for negligently killing him: International & Great Northern R. R. v. Kuehn, 35 Am. & Eng. R. R. Cases, 421; Davis v. St. Louis I. M. & S. R. R., 44 Am. & Eng. R. R. Cases, 693.

*B. F. Junkin*, with him *J. C. Bucher* and *J. S. Kline*, for appellee.—No recovery could be had by the widow, if it were proved that the decedent had himself been guilty of contribu-

tory negligence; she does not recover because the injury produced her husband's death, but because he himself could have sued had he lived—it is his cause of action that she enforces, and where he had none she has none: British Statute of the 9th & 10th Victoria, c. 93; Read v. The Great Eastern Ry., L. R. 3 Q. B. 555.

OPINION BY MR. JUSTICE GREEN, November 9, 1896:

The plaintiff's husband was injured in a collision on the defendant's road in November, 1890. He died of Bright's disease in September, 1891. He was more or less infirm in physical health during the intervening period, being part of the time able to attend to his business and part of the time unable. Shortly after his injury he settled with the defendant for all claims and demands on account of the accident, and executed an absolute release of all demands under seal for the sum of $350, which was duly paid to, and accepted by, him. The evidence indicates very strongly that the cause of the death was Bright's disease and not the injury, but that question does not arise because the learned court below ruled that the plaintiff could not maintain the action on account of the release executed by her husband, and gave a binding instruction to the jury to find for the defendant. Substantially the question arising, is, whether the wife, under our existing legislation, and upon the facts of this case, has an independent right of action for the death of the husband which the husband could not release. It is contended for the appellant that she has such a right of action and that, therefore, the husband's release could not affect it. The solution of the question depends upon the construction to be given to our two acts of assembly of April 15, 1851, P. L. 674, and April 26, 1855, P. L. 309.

The act of 1851 provides as follows: Section 18. That no action hereafter brought to recover damages for injuries to the person by negligence or default shall abate by reason of the death of the plaintiff; but the personal representatives of the deceased may be substituted as plaintiff and prosecute the suit to final judgment and satisfaction.

Section 19. That whenever death shall be occasioned by unlawful violence or negligence, and no suit for damages be brought by the party injured during his or her life, the widow of any

such deceased, or if there be no widow, the personal represen-
tatives may maintain an action for and recover damages for the
death thus occasioned.

It will be observed that in both these sections the right of
action conferred is for the death of the party injured. The 18th
section provides for the case of a party injured who has brought
an action for his injury, but subsequently dies, and directs that
in such case the action shall not abate by reason of the death
but shall survive to his personal representatives. Section 19
provides that if no action has been brought for the injury dur-
ing the life of the party injured the widow, or, if there is no
widow, the personal representatives may maintain an action and
recover damages for the death thus occasioned. Thus both
classes of cases are provided for, the one, where an action was
brought by the injured party during his life but the plaintiff
died pending the action, and the other where no action had been
brought at the time of the death of the party injured. While
it is very true that the injured party could in no circumstances
recover damages for his own death, yet it is equally true that
the cause of action provided for by both sections is death result-
ing from injuries. The act did not undertake to give a cause
of action to the party injured for the injuries he had sustained
because such a right of action already existed independently of
the act. Hence it cannot be argued that the intention of the
18th section was to give one right of action to the party injured
and another and independent right of action for the same injury
to his widow. The cause of action is the same in both sections,
to wit, the death of the party, the only difference being that the
18th section provided for an action already pending, that it
should not abate but should survive to the personal representa-
tive, and the 19th section provided that in case no action had
been brought before the death of the party, an action might be
brought by the widow, or if there was no widow, then by the
personal representatives. The remedy given to the widow by
the 19th section was, of course, a new remedy which had no
previous existence. This we held in the case of Fink v. Gar-
man, 40 Pa. 95, and again in Birch v. Railway, 165 Pa. 339, in
the latter of which we said, " While grounded on the same
' unlawful violence or negligence ' for which the injured party
had a common law right of action in his lifetime, the statutory

right, given by the 19th section, is conditioned upon the concurring facts, that the injured party's death was occasioned by violence or negligence, and that no suit for damages was brought by him." In the foregoing case the party injured, Mrs. Taylor, had brought an action in her lifetime to recover damages for the injury, but died pending the action and before trial. Thereupon an amended statement was filed alleging her death and praying to substitute her executors. To this the defendant pleaded, that the cause of action survived to the persons named in the act of 1855 and therefore could not be maintained by the executors. But we held that it did survive to the executors under the 18th section of the act of 1851. As to this we said, "It follows from what has been said, that the substitution of Mrs. Taylor's executors as plaintiffs, in the action commenced by her, was fully authorized, and they should be permitted to prosecute the same to final judgment and satisfaction, notwithstanding the fact, averred in their amended statement, that her death was occasioned by the defendant company's negligence. In the circumstances, their substitution was clearly warranted by the 18th section of the act of 1851." In substance this was a decision that although death resulted from the injury the right of action survived to the executors of the decedent and was not transmitted to the other parties named. It is true an action had been brought by the injured party in that case, and here no action had been brought, by the person injured before his death, but he had exercised his control over the right of action at a time when he alone had the whole right, with the same effect as if he had brought an action and had prosecuted it to judgment and satisfaction. The basis of the action is the negligence of the defendant. When the injured person survives, the sole right of action is vested in himself alone. If he brings an action and it is tried and results in a verdict and judgment for the plaintiff, which is paid, it must be conceded that this is the end of the case. The defendant's negligence has been tried and adjudged and when the judgment has been discharged by payment it has been satisfied for all purposes. The consequences of the transgression have been suffered and the penalty paid. We cannot consider, and it has not been so decided, that in this contingency there may be another suit brought for another result of the same act of negligence. The acts we are consider-

ing do not confer any such right, nor any right to recover as upon an additional cause of action. In other words, without these acts a cause of action for a specific act of negligence would have died with the person and there could then be no recovery by anybody. But that consequence of the existing state of the law it was desired to avert and, under the acts, the action does not die but survives to certain persons named. But it is an action for the same injury, and upon the basis of the same negligence. The acts accomplish the preservation of a right of recovery but they do not give, or assume to give, another and additional remedy to other parties for the same injury. If they would bear such a construction it would follow that by force of the acts there was a right to recover for the injuries to the husband, considered only as injuries to himself and in addition to that a new and other and independent right of action to the widow in her own right, and for her own benefit, and for the injury to herself. No such purpose is avowed in the act, and no such meaning is within its language.

We do not think the act of April 26, 1855, P. L. 309, affects this view of the subject or makes any change in the fundamental character of the previous legislation. It simply enlarges the designation of the persons entitled to recover damages for an " injury causing death " so as to embrace children or parents of the deceased, and expresses the mode of distribution of the damages recovered.

The right of action was in its origin the sole property of the husband and of course subject to his control. If he exercised it and conducted it to verdict, judgment and satisfaction in the courts, that was the end of it. Neither he nor any one else could maintain a second action for the same injury. So also he could compound it, and could adjust the amount to be received from the offending party and could agree that the amount received should be a full solatium for the injury and the damage sustained. That would be a necessary incident to his ownership of the right of action. Such an adjustment would be the full equivalent of a verdict, and judgment in an adversary proceeding. In either event the remedy would be exhausted. It would have to be conceded that this must be so, if subsequently to the adjustment, some other and more serious consequence resulted from the injury than any that was anticipated when the

settlement was made, and we know of no reason why this would not be true when such ulterior consequence was the death of the party injured.

The very question we are considering has been adjudged in the Queen's Bench in England in the case of Read v. The Great Eastern Railway Co., L. R. 3 Queen's Bench, 555. The English statute of 9 & 10 Vict. c. 93, is almost precisely like our act of 1851, and was probably the model upon which our act was framed. In the case referred to the husband had sustained an injury on the defendant's road, and had subsequently settled with the defendant and executed a release of all damages arising from the injury, and afterwards died. The defendant pleaded the release to which the plaintiff demurred. In disposing of the demurrer, BLACKBURN, J., said, " I think the plea is a good plea. The question turns upon the construction of s. 1 of 9 & 10 Vict. c. 93. Before the statute, the person who received a personal injury, and survived its consequences, could bring an action and recover damages for the injury, but if he died from its effects then no action could be brought. To meet this state of the law 9 & 10 Vict. c. 93, was passed, and ' whenever the death of a person is caused by a wrongful act and the act is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable if death had not ensued shall be liable for an action for damages notwithstanding the death of the party injured.' Here taking the plea to be true, the party injured could not " maintain an action in respect thereof," because he had already received satisfaction. Then comes s. 2, which regulates the amount of the damages and provides for its apportionment in a manner different to that which would have been awarded to a man in his lifetime. This section may provide a new principle as to the assessment of damages, but it does not give any new right of action. . . . The intention of the enactment was that the death of the person injured should not free the wrongdoer from an action, and in those cases where the person injured could maintain an action his personal representative might sue."

LUSH, J.—" I am of the same opinion. The intention of the statute is not to make the wrongdoer pay damages twice for

the same wrongful act, but to enable the representatives of the person injured to recover in a case where the maxim actio personalis moritur cum persona would have applied. It only points to a case where the party injured has not recovered compensation against the wrongdoer."

The English statute is somewhat broader than ours, because it is not limited to cases in which an action had been brought by the injured party and he had died pending the action, nor yet to cases in which no action has been brought by the injured party in his lifetime, and the remedy is given without qualification in all cases. The second section authorizes the jury to give such damages, " as they may think proportioned to the injury resulting from such death to the parties respectively, for whom and for whose benefit such action shall be brought." That is, damages may be had for the death as declared in our 19th section of the act of 1851, but yet the person injured has such a right in the cause of action as that he may release the offending party from all damages. The assignments of error are not sustained.

Judgment affirmed.