4 So.2d 315
**BREED v. ATLANTA, B. & C. R. CO.**
**6 Div. 809.**

Supreme Court of Alabama.
June 5, 1941.

Rehearing Denied Oct. 23, 1941.

Peyton D. Bibb and Bibb & Rice, all of Birmingham, for appellee.

Wm. Dowdell Denson and Edward W. McDonald, both of Birmingham, for appellant.

BROWN, Justice.

This is an action on the case by the appellant as the administrator of Joe Breed, deceased, for his wrongful death under § 5696 of the Code, 1923, Code 1940, Tit. 7, § 123.

Counts one and two of the complaint aver, in short, that while said Joe Breed was in the act of crossing the defendant's railroad track, he was run against and killed by a train of the defendant, and that his death was proximately caused by the negligence of defendant's servants or agents while acting within the scope of their employment in the operation of said train. The third count, otherwise the same as the other two, charges that said death was caused by the "wanton, wilful, or intentional conduct of the servants or agents" in causing said train to run against said intestate.

The defendant filed pleas in abatement alleging that at the time of said intestate's death he was a convict under life sentence to the penitentiary in Alabama.

The plaintiff's demurrer to said pleas, assigning thirty grounds, was overruled; the plaintiff because of said ruling took a nonsuit, authorized by § 6431, of the Code of 1923, Code 1940, Tit. 7, § 819, and appealed.

The argument for appellee is that in consequence of his conviction and sentence to life imprisonment said intestate was civiliter mortuus, and therefore deprived of all civil rights including the right to redress for civil injury resulting from the defendant's delict, and therefore under the condition in the statute *"if the testator or intestate could have maintained an action for such wrongful act, omission, or negligence, if it had not caused death,"* the life of said intestate was not within the protective provision of the statute, and the plaintiff was without legal right to sue. [Italics supplied.]

■ The statute, Code of 1923, § 5293, Code 1940, Tit. 61, § 3, modifies and reaffirms the common law to the effect that a conviction and sentence to life imprisonment, constitutes civil death—that state of a person who, although possessing natural life, has lost all his civil rights and as to them is civilly dead. Holmes v. King, 216 Ala. 412, 113 So. 274; Quick v. Western Ry. of Alabama, 207 Ala. 376, 92 So. 608.

■■ The answer to appellee's contention is that Code, § 5696, does not deal with the civil rights of persons whose death is caused by "wrongful act, omission, or negligence." It deals with the natural right of life which is in no way affected by a conviction and sentence to life imprisonment. The very sentence and judgment of the court imposing it recognizes and confirms the right of the convict to life. The purpose and scope of our statute, Code 1923, § 5696, whatever the rule may be elsewhere, is to protect human life; to prevent homicides by wrongful act, omission or negligence of persons and corporations, their agents and servants; and to stimulate diligence in the protection of the natural right to live, without respect to the personal condition or disability of the person so protected. Savannah & Memphis Railroad Co. v. Shearer, Adm'x, 58 Ala. 672; South & North Alabama Railroad Company v. Sullivan, Adm'r, 59 Ala. 272; Richmond & Danville Railroad Company v. Freeman, 97 Ala. 289, 11 So. 800.

In the case first above cited, decided at the December Term, 1877, construing the act of February 5, 1872, now § 5696 of the Code, this court speaking through Stone, J., afterwards for many years Chief Justice, observed: "Lacerated feelings of surviving relations, and mere capacity of deceased to make money if permitted to live, do not constitute the measure of recovery under the act of Feb. 5, 1872. Prevention of homicide is the purpose of the statute, and this it proposes to accomplish by such pecuniary mulct as the jury 'deem just.' The damages are punitive, and they are none the less so, in consequence of the direction the statute gives to the damages when recovered. They are assessed against the railroad 'to prevent homicides.'"

In the Sullivan case, supra, the court speaking through the brain and pen of the same great jurist observed: "Commenting on the act 'to prevent homicides,' of February 5, 1872, Pamph.Acts 83, we, in Savannah & Memphis Railroad Company v. Shearer, said, in effect, that the purpose and result of the suit therein provided were not a mere solatium to the wounded feelings of surviving relations, nor compensation for the last earnings of the slain. We think the statute has a wider aim and scope. It is punitive in its purposes. Punitive of the person or corporation by which the wrong is done, to stimulate diligence and to check violence, in order thereby to give greater security to human life; 'to prevent homicides.' And it is none the less punitive because of the direction the statute gives to the damages recovered. * * * Preservation of life—prevention of its destruction by the wrongful acts or omission of another,—is the subject of the statute; and all its provisions are but machinery for carrying it into effect."

This interpretation and application of the statute was restated and reaffirmed in Richmond & Danville Railroad Company v. Freeman, supra, and the statute has been brought through the several Codes since that time to the present without change.

■ The right of action which the statute gives is a new right, not derivative nor the right of succession to the person slain. It is not a right of property, and the personal representative in bringing and prosecuting the suit acts as an agent of legislative appointment for the effectuation of the public policy it declares—the prevention of homicides. Holt v. Stollenwerck, 174 Ala. 213, 56 So. 912; White v. Ward, 157 Ala. 345, 47 So. 166, 18 L.R.A.,

N.S., 568; Kuykendall v. Edmondson, 205 Ala. 265, 87 So. 882.

In Holt v. Stollenwerck, supra, the court speaking through Sayre, J., observed: "The right to prosecute an action for the wrongful death of his decedent is vested by the statute creating the right (Code, § 2486) in the personal representative for a definite legislative purpose, to prevent homicide. In prosecuting such action, the personal representative does not act strictly in his capacity as administrator of the estate of his decedent, because he is not proceeding to reduce to possession the estate of his decedent, but rather he is asserting a right arising after his death, and because the damages recovered are not subject to the payment of the debts or liabilities of the decedent. He acts rather as an agent of legislative appointment for the effectuation of the legislative policy, and upon recovery as a quasi trustee for those who stand in the relation of distributees to the estate strictly so called. White v. Ward, 157 Ala. 345, 47 So. 166, 18 L.R. A.,N.S., 568. And the right is vested in the personal representative alone."

Harking back, more than a half of a century, we find that Justice Stone, in Sullivan's case said: "This provision of the statute can not be carried out, unless we allow the personal representative of the person whose death was caused by the 'wrongful act or omission of another,' to bring the suit. The statute creates the right—a right unknown to the common law—and provides a remedy. * * * Hence, if we hold that the personal representative of a married woman can not maintain an action under this statute, we deny all redress for the killing of married women by the wrongful act or omission of another. * * * It is here contended that the wife, if living, could not have maintained an action in her own name, without joining her husband as co-plaintiff, and that her personal representative can not sue. We do not think this is either the object or sense of the clause referred to. The language, 'if the former could have maintained an action against the latter for the same act or omission, had it failed to produce death,' *was intended to declare the character of act or omission which would support the action; not the person by whom it could be maintained.* That had already been provided for in the declaration that the personal representative should sue." [Italics supplied.]

This interpretation of the statute was reaffirmed in King, Adm'x, v. Henkie et al., 80 Ala. 505, 509, 60 Am.Rep. 119, in the following language: "The condition that the action must be one which could have been maintained by the deceased had it failed to produce death, or had not death ensued, has no reference to the nature of the loss or injury sustained, or the person entitled to recover, but to the circumstances attending the injury, and the nature of the wrongful act or omission which is made the basis of the action. Saunders on Negligence, 219; South & North Alabama R. R. Co. v. Sullivan, 59 Ala. 272, 281. As said in Whitford v. Panama R. R. Co., 23 N.Y. 465, where a similar phrase in the New York statutes was construed, it 'is inserted solely for the purpose of defining the kind and degrees of delinquency with which the defendant must be chargeable in order to subject him to the action.' "

These decisions have been made the basis of the text in 8 R.C.L. p. 746, § 38. We quote: "It is usually held, however, that the condition that the action must be one which could have been maintained by the deceased had it failed to produce death, or had not death ensued, has no reference to the nature of the loss or injury sustained, or the person entitled to recover, but to the circumstances attending the injury, and the nature of the wrongful act or omission which is made the basis of the action. As stated by one court in construing this condition, it was inserted in the statute solely for the purpose of defining the kind and degrees of delinquency with which the defendant must be chargeable in order to subject him to the action."

And in 16 American Jurisprudence, p. 63, § 82, it is stated: "It is usually held that the condition that the action be one which could have been maintained by the deceased if death had not ensued has no reference to the loss or injury sustained *or the person* entitled to recover, but to the circumstances attending the injury and the nature of the wrongful act or omission which is made the basis of the action. As stated by one court in construing this condition, it was inserted in the statute solely for the purpose of defining the kind and degrees of delinquency with which the defendant must be chargeable in order to subject him to the action." [Italics supplied.]

Cited as supporting this text is our case of King v. Henkie, 80 Ala. 505, 60 Am.Rep. 119, and cases from Indiana, Mississippi and South Dakota. It is also supported by Whitford v. Panama R. R. Co., 23 N.Y. 465.

The text in 25 C.J.S., Death, § 24 states: "The words common to many statutes limiting recovery to cases in which the injured person would have been entitled to maintain an action if death had not ensued are to be construed as defining the character of the injury and the circumstances under which it was inflicted. They mean that the wrong in the first instance shall give rise to a cause of action." King v. Henkie, 80 Ala. 505, 60 Am.Rep. 119, and cases from Michigan, New York, Indiana and England [Pym, Administratrix v. Great Northern Railway Company, 2 Best & Smith, Q. B., 759] are cited as supporting the text.

■ If the facts and circumstances give rise to a cause of action, the civil disability of the person whose death is caused does not, as held in King v. Henkie, supra, affect the right of such person's administrator to sue for his wrongful death.

That decision was rendered at the December Term, 1886, and the statute as interpreted in these early decisions has been brought through the several Codes since that date without change, and it now speaks in the language of these Alabama decisions. Spooney v. State, 217 Ala. 219, 115 So. 308.

The appellee cites and relies on Lawrence et al. v. Seay, 179 Ala. 386, 60 So. 937; Northern Alabama Railway Company v. Guttery, 189 Ala. 604, 66 So. 580; Suell v. Derricott et al., 161 Ala. 259, 49 So. 895, 23 L.R.A.,N.S., 996, 18 Ann.Cas. 636; Williams v. Alabama Great Southern Ry. Co., 158 Ala. 396, 48 So. 485, 17 Ann. Cas. 516; Ex parte Adams, 216 Ala. 241, 242, 113 So. 235; and Owens v. Auto Mut. Indemnity Co. et al., 235 Ala. 9, 177 So. 133.

The question presented by the ruling of the court on the demurrer to defendant's pleas was not the question in any of the cited cases. The question discussed in the two first cited cases deals with the character and quality of the act necessary to bring the case stated within the homicide statute. The first dealt with the sufficiency of the complaint on demurrer thereto, and in the second the question presented, to state it in the language of the opinion, was [189 Ala. 604, 66 So. 582]: "The pleaded theory of defendant's responsibility and accountability for Guttery's death comprehends the assertion that for the wrongful or negligent acts or omissions of the Mobile & Ohio Railroad Company, resulting in the damnifying consequences averred, in the use of the defendant's tracks, facilities, etc., under contract between them, the defendant is liable."

Suell v. Derricott et al., supra, involved the right of the defendants to set up self-defense where the killing was accomplished in an attempt to arrest the deceased who was in the act of committing burglary on property in the custody of the defendants.

Williams v. Alabama Great Southern Ry. Co., supra, was an action under the Employer's Liability Act, commenced three years after the injury, death resulting approximately two years after the injury. The question was whether or not the action to recover compensatory damages was barred by the statute of limitations of one year. The holding was that the right of action in the administrator was by succession to the existing right of the injured employee, and we quote from the opinion [158 Ala. 396, 48 So. 486, 17 Ann.Cas. 516]: " 'In the view we take of the statute, the right to be enforced is not an original one, springing into existence from the death of the intestate, *but is one having a previous existence, with the incident of survivorship, derived from the statute itself.*'" [Italics supplied.]

This rule of succession was applied by the court in Ex parte Adams, supra, in sustaining a plea in abatement filed under § 5657 of the Code of 1923, Code 1940, Tit. 7, § 146, setting up the pendency of a suit brought by the plaintiff's intestate before her death, in abatement of the action by the administrator, under the Homicide Act. The substance of the holding was that the action by the intestate for false imprisonment, assault and abuse, in which she sought compensatory damages, was the same as the cause of action under the Homicide Act, and that the administrator stood in the shoes of his intestate. This ruling is in conflict with Bruce v. Collier, 221 Ala. 22, 127 So. 553, 554, where it was observed:

"At the time of the passage of our statute to prevent homicide, and on down to the Code of 1907, our statute defining what actions survive, read:

" 'Actions survive to and against representative.—All actions on contracts, express or implied, all personal actions, except for injuries to the person or reputation, survive in favor of and against the personal representatives.' Code of 1896, § 35(2600) (2920) (2555) (2157).

"During all this period actions for personal injury, whether or not death ensued from the injury, did not survive to his administrator. In this state of the law the Homicide Act was passed creating a new cause of action, punitive in character, for the benefit of the next of kin entitled to take as distributees of his estate.

"In the Code of 1907, (section 2496) the above-quoted statute was amended by striking out the words 'person or,' so that now actions for 'injuries to the person' do survive. Does this mean injuries causing death, those covered by the Homicide Act? *We think not.* There is a clear field for the operation of this amendment in cases where pending a suit for personal injury the plaintiff dies from other cause than the injury sued for;" and ignores the consistent interpretation of the statute—the Homicide Act—that the right of action given by it is a new right; unknown to common law, and did not come into existence until death ensued from the wrongful act, omission or negligence. [Italics supplied].

16 Am.Jur. p. 48, § 61 states: "The view which is believed to be based upon the better reasoning that wrongful death statutes are not 'survival statutes,' but create a new cause of action, is the one supported by the courts generally and by the later trend of authority in particular."

■ This is the rule of our decisions. Kennedy v. Davis, 171 Ala. 609, 55 So. 104, Ann.Cas.1913B, 225; White v. Ward, supra.

Owens v. Auto Mut. Indemnity Co. et al., supra, was a suit on an insurance policy, and the effect of the holding in that case was that the asserted liability was not within the coverage of the policy. See, Mi-Lady Cleaners v. McDaniel, 235 Ala. 469, 472, 179 So. 908, 116 A.L.R. 646, note.

■ We, therefore, hold that while the plaintiff's intestate was deprived of his *civil rights* by the conviction and life sentence to the penitentiary, said conviction did not deprive him of the right to life, and his life was within the protection of the Homicide Act. The court, therefore, erred in overruling the plaintiff's demurrer to the several pleas.

The judgment of nonsuit is therefore set aside and vacated; the judgment and ruling of the Circuit Court is reversed and the cause is remanded.

Reversed and remanded.

THOMAS, BOULDIN, and LIVINGSTON, JJ., concur.

GARDNER, C. J., and FOSTER, J., dissent.

On Rehearing.

BROWN, Justice.

The contention of the appellee that the foregoing opinion precludes a defendant sued under the homicide act from pleading self-defense, contributory negligence and assumption of risk is so clearly without merit it would seem that no answer to it is necessary.

■ The authorities are uniform in holding that such defenses are permissible, and that this was the purpose and scope of the qualifying provision in the statute "if the testator or intestate could have maintained an action for such wrongful act, omission, or negligence, if it had not caused death." Code 1940, Tit. 7, § 123. Stated in the language of the authorities, that qualifying provision "was intended to declare the character of act or omission which would support the action; *not the person by whom it could be maintained.*" South & N. A. R. Co. v. Sullivan, 59 Ala. 272, 281. [Italics supplied.]

The only point decided in this case is that the common law disability of the intestate, springing from his conviction and sentence for life, does not preclude the plaintiff as administrator of his estate from maintaining the action.

That question, in principle was settled in the Sullivan case, decided at the December Term, 1877, ten years before married women were given the right to sue for their personal injury.

It is familiar law that the common law disability of a married woman to sue alone for her personal injury continued until the enactment of the "Married Woman's Law" of February 28, 1887, which provided:

"The wife must sue alone, at law or in equity, upon all contracts made by or with her, or for the recovery of her separate property, or for injuries to such property,

or for its rents, income, or profits, or for all *injuries to her person or reputation;* and upon all contracts made by her, or engagements into which she enters, and for all torts committed by her, she must be sued as if she were sole." Code 1886, § 2347. [Italics supplied.]

In Sullivan's case, 59 Ala. 272, 281, to quote from the court's opinion: "It is here contended that the wife, if living, could not have maintained an action in her own name, without joining her husband as co-plaintiff, and that her personal representative can not sue. We do not think this is either the object or sense of the clause referred to. The language, 'if the former could have maintained an action against the latter for the same act or omission, had it failed to produce death,' was intended to declare the character of act or omission which would support the action; not the person by whom it could be maintained. That had already been provided for in the declaration that the personal representative should sue."

In another part of the opinion it was observed: "Hence, if we hold that the personal representative of a married woman can not maintain an action under this statute, we deny all redress for the killing of married women by the wrongful act or omission of another."

And again: "The language of the statute is, 'when the death of a person is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action.' This statute contains no qualifying clauses, limiting its remedial provisions to any class or classes of persons, or excluding any class from its wholesome terms. It employs the word person in its broadest sense, and it would seem that every being falling within that general designation may take shelter under its protecting wings."

THOMAS, BOULDIN, FOSTER, and LIVINGSTON, JJ., concur in the foregoing opinion of BROWN, J.

KNIGHT, J., not sitting.

BOULDIN, Justice (specially concurring).

Reduced to its essence the inquiry is this:

Is a convict under sentence of imprisonment for life entitled to the protection of the Alabama Statute to 'prevent Homicide? Tit. 7, § 123, Code of 1940.

The action is punitive, to prevent the taking of human life by wrongful act; prevent it by a law warning the careless that he is subject to be mulcted by such sum in punishment of his wrong as the jury shall assess.

The award is in no sense compensatory, either for pecuniary loss or pain and suffering of the decedent, nor for loss suffered by his dependents or next of kin. Evidence of compensatory damages is not even admissible. It is no part of the estate of decedent in the sense of an estate acquired during his life, either in property or as damages for personal injuries. The personal representative is a law appointed agent to bring an action to enforce the statute against the wrongdoer. In providing for a disposition of the sum assessed to prevent homicides the lawmakers selected the next of kin, who, under existing law, are distributees of the estate left by decedent. The beneficiary or beneficiaries become the direct owners of the cause of action. They may agree upon, collect and give releases for the demand before an administrator is appointed. Surely there is no need to further review our line of cases to support all these propositions. They are found in the annotations to the above cited section of our new Code.

If the purpose of the statute be what its original title said it was, and what this court has said it is, then the simple question is, what has the status of civil death to do with it?

Civil death means the loss of civil rights, including the right to sue in the courts. Civil rights are all those which arise from positive law. There are natural rights; rights which exist even if there were no government; no civil rights defined by law. They are inalienable rights with which every man is endowed by the creator. To conserve them is the end and object of government. Among these are life and liberty. They may be forfeited by the act of their possessor alone. These are not meaningless platitudes. They are fundamental concepts; they are of the genius of our institutions. See Section 1, Alabama Bill of Rights; 14 C.J.S., Civil Rights, p. 1160, § 2; 10 Am.Jur. 894.

A life convict has forfeited his natural right to liberty, not the natural right to live. He may be pardoned, and his civil rights restored. Vann v. Rogers, 225 Ala. 186, 142 So. 539.

If he has the natural right to life, by what process of reasoning should the law to prevent homicides not shield him from death by wrongful act as any other human being?

To murder him is a crime the same as the murder of another man. 18 C.J.S., Convicts, p. 102, § 2.

Indeed, it seems the penal laws, enforceable by the state, protect him against assault and battery or mayhem as any other. I find no authority to the contrary, and to my thinking, any other view would be a reproach to civilization.

The life convict can be convicted of crime as any other man.

By the Homicide Act the state has made an additional safeguard to human life. Not a penal statute enforceable by prosecution in the name of the state; but a punitive statute enforceable by civil action brought by a state appointed agent to recover such sum as may be a just imposition upon the wrongdoer, determinable by the culpability of the wrongful act causing the death of a human being. A life convict is still a human being entitled to all the protection of the natural right to live as other men, unless the statute which creates this cause of action excludes him from its protection. The clause "if the testator or intestate could have maintained an action for such wrongful act, omission, or negligence, if it had not caused death" is the sole provision on which can be rested any exclusion of a life convict from the protection of the statute.

For my part, I can see no point in quoting and relying on the numerous cases construing this clause wherein the court was dealing with defenses going to the merits of the case. The reference to Lord Campbell's Act in these cases was to emphasize that all defenses arising from the circumstances which would defeat an action for personal injury on the merits of the case are available in this action. This thought of the court was not directed to the question here presented. Lord Campbell's Act was strictly compensatory. In this its aim and purpose was different from ours. This difference presents the real question before us. 25 C.J.S., Death, p. 1076, § 15.

To make our cases now do service as contended is to put them in conflict with the other line of cases, beginning with South & North Alabama Railroad Company v. Sullivan, Adm'r, 59 Ala. 272, definitely holding this clause has no reference to civil disability of the injured party, cutting him or her off from any right of action for personal injuries. That case proceeds on the hypothesis, that if the common law still prevailed, touching actions for personal injuries to a married woman, she had no cause of action; the cause of action was in the husband. The recovery belonged to him. The wife merely joined in the action to recover a chose in action belonging to the husband. Note the following in the opinion of Justice Stone:

"This statute contains no qualifying clauses, limiting its remedial provisions to any class or classes of persons, or excluding any class from its wholesome terms. It employs the word person in its broadest sense, and it would seem that every being falling within that general designation may take shelter under its protecting wings."

The original act, there considered, used the word "person" instead of "intestate" as in the present statute.

But it is said "There must be a cause of action." What is the cause of action? Time after time our cases have followed the plain words of the statute. The cause of action is the wrongful act causing the death of a person. The case of Ex parte Adams, 216 Ala. 241, 113 So. 235, 236, dealt solely with the question whether two suits could be maintained, one for personal injury, which pending suit resulted in death, and a second suit under the Homicide Act.

Said the court: "We think that the cause of action * * * is identical—*that is, the same wrong*." [Italics supplied.]

Speaking of the Homicide Act, it was further said:

"The statute only applies when deceased could have maintained action had he survived, but the nature of the wrongful act or omission is the basis of the action. South & North R. R. v. Sullivan, 59 Ala. 272."

Here the court definitely approved the doctrine of South & North A. R. R. Co. v. Sullivan, supra, evidently intending to make clear that what was written in the Adams case was not to be read as in conflict with the Sullivan case.

As applied to two actions, one a revivor of the action for personal injuries, another an action under the Homicide Act, both arising from the same wrongful act, the case of Ex parte Adams was followed and approved in Bruce v. Collier, 221 Ala. 22, 127 So. 553, where further reasons against

the maintenance of two actions for the same wrongful act are discussed.

When properly read, I think there is no occasion for criticism of Ex parte Adams, supra. My view is we need merely adhere to the basic idea that our statute under which this suit is brought is to prevent homicides, safeguard the natural right to life.

The disability to sue for personal injury resulting from civil death was never intended to deprive one of the protection of the laws for this purpose. This, I think, the correct view if our cases defining the clause in question had never been written.

But, it so happens, there has been occasion to so declare in a line of cases never overruled, and now written into legal publications as the law of Alabama and many other states. 25 C.J.S., Death, p. 1092, § 24.

Civil death, with its incidents at common law, has, in the absence of statutes, been generally repudiated in this country as repugnant to our institutions. Our statute, because of its special provision for making a will within six months after sentence for life, has been construed to contemplate a winding up of his estate thereafter *as in case of natural death.* Holmes v. King, 216 Ala. 412, 113 So. 274.

If such convict be pardoned and his civil rights restored, he may accumulate another estate to be administered after his natural death. So, there seems no point in the idea that two administrators may not be appointed, one to wind his estate when sentenced, the other to enforce the new cause of action arising from his death by wrongful act.

The civil death statute should be limited to its manifest purpose, and not so extended as to deprive him of the benefits of another statute expressly enacted to protect the natural right to life.

Owens v. Auto Mut. Indemnity Co. et al., 235 Ala. 9, 177 So. 133, was an action under § 5695, Code of 1923, an action for punitive damages for the death of a minor child by wrongful act. The father, himself the tort-feasor, is, under the statute, one of the beneficiaries of the recovery.

An action for punitive damages against the indemnitor of the tort-feasor, for his benefit, would convert the statute to prevent homicides into one to encourage homicides. See Anno.Tit. 7, § 119, Code of 1940; Ex parte Corder, 222 Ala. 694, 134 So. 130; McWhorter Transfer Co. et al. v. Peek, 232 Ala. 143, 167 So. 291.

The result in the Owens case was correct. It seems to have been presented to this court on lines covered by the decision. The Sullivan case and others to like effect were not cited. So far as appears the principle they assert was not raised.

Late cases shedding distinct light on the case are: Oliveria v. Oliveria, 305 Mass. 297, 25 N.E.2d 766, 768, 769, and Kaczorowski v. Kalkosinski, 321 Pa. 438, 184 A. 663, 104 A.L.R. 1267.

THOMAS, Justice (concurring).

I concur with the opinion by Mr. Justice BROWN on original hearing, and the concurrence therewith by Mr. Justice BOULDIN.

The several opinions by the majority and the dissenting opinion of our Mr. Chief Justice Gardner refer to the case of Owens v. Auto Mutual Indemnity Co., 235 Ala. 9, 177 So. 133. This case has been considered in 122 A.L.R. 1352 under the subject of the "Right of minor child to sue parent or person in loco parentis for personal tort." In the annotations under this subject it is said:

"In the original annotation on the present subject it is stated that 'it is generally held that no action may be maintained against a parent or one standing in loco parentis, by a minor child, for a personal tort committed by the former against the latter.' This rule finds support in later decisions, subject to modifications, subsequently, noted herein, in some jurisdictions regarding emancipated children, adoptive parents, etc., and malicious torts.

"Alabama—Owens v. Auto Mut. Indem. Co. (1937) 235 Ala. 9, 177 So. 133."

This is the rule in Arkansas, California, Georgia, Illinois, Massachusetts, Minnesota, Missouri, New Jersey, New York, Ohio, Pennsylvania, South Carolina, Tennessee, Virginia and West Virginia.

In 122 A.L.R. 1357 it is further declared: "And in Owens v. Auto Mut. Indem. Co. (1937) 235 Ala. 9, 177 So. 133, in which it was held that a suit by the personal representative of a deceased unemancipated minor to recover for the death of the minor due to the negligent operation of an automobile truck by his father *could not be maintained against an insurance company which had assumed to pay any dam-*

*ages imposed by law upon insured, father of the deceased, in the operation of an automobile truck,* the court pointed out that the common-law rule precluding suits by unemancipated minors against their parents had not been changed by a statute (Code, § 5695) authorizing personal representatives to maintain an action and recover damages for injuries causing the death of a minor child, although such statute did not contain the proviso of § 5696 of the Code, reading: 'If the testator or intestate could have maintained an action for such wrongful act, omission, or negligence, if it had not caused death.'"

This sound public policy and right construction of our statutes and decisions in the foregoing opinion by Mr. Justice BROWN, and in the concurrence therewith by Mr. Justice BOULDIN, conforms with my present view. I believe that holding will not be found in conflict with the decision in Owens v. Auto Mut. Indemnity Co., supra, when given careful consideration.

It may be there are expressions in our decisions that are not in absolute harmony, or in conflict. Witness the cases of Ex parte Adams, 216 Ala. 241, 113 So. 235, and Bruce v. Collier, 221 Ala. 22, 127 So. 553. As I understand these two cases are in conflict and the last expression of this court was by Mr. Justice BOULDIN as appears from a careful consideration of his opinion in Bruce v. Collier, supra.

Suffice it to say here, however, I concur with the opinion of Mr. Justice BROWN.

**PER CURIAM.**

Opinion extended and application for rehearing overruled.

FOSTER, J., withdrawing his dissent.

All Justices concur (BOULDIN, J., concurring specially), except GARDNER, C. J., who dissents and KNIGHT, J., not sitting.

GARDNER, Chief Justice (dissenting).

I am unable to concur. The majority view in effect overrules Ex parte Adams, 216 Ala. 241, 113 So. 235, and in my humble judgment runs counter to the construction of our homicide statute as found in Suell v. Derricott, 161 Ala. 259, 49 So. 895, 897, 23 L.R.A.,N.S., 996, 18 Ann.Cas. 636 and Lawrence v. Seay, 179 Ala. 386, 60 So. 937. In these cases it was expressly stated: "that the right of action is only given un-

der this statute to the personal representative when the intestate could have maintained an action for the same act had it failed to produce death". Of course, under our statute (Section 5293, Code 1923, Code 1940, Tit. 61, § 3), had injury not resulted in death there would have been no right of action whatever. Quick v. Western Railway of Alabama, 207 Ala. 376, 92 So. 608.

In Holmes v. King, 216 Ala. 412, 113 So. 274, 275, the Court said: "'Civil death' of a person in the literal sense, as known at common law, was the extinction of civil rights and relations, so that his estate passed to his heirs as if dead in fact." And as said in 14 Corpus Juris Secundum, p. 1155, the term civil death "imports a deprivation of all rights whose exercise or enjoyment depends on some provision of positive law". See also Owens v. Auto Mutual Indemnity Co., 235 Ala. 9, 177 So. 133, the reasoning of which lends support to these dissenting views. And in Vol. 4, Restatement of the Law of Torts, § 925, is the following: "Actions for Causing Death. Although the death statutes create a new cause of action (i.e. one not known at common law), both they and the survival statutes are dependent upon the rights of the deceased. Hence where no action could have been brought by the deceased had he not been killed, no right of action exists."

The cases of Osburn, Keister's Adm'r v. Keisler's Ex'rs, 123 Va. 157, 96 S.E. 315, 1 A.L.R. 439, and Wilson v. Brown, Tex. Civ.App., 154 S.W.2d 322, may likewise be noted in support of this view.

Under our statute it is clear enough the deceased had no "substantive civil right", to use the language of the Virginia Court in the Osburn case [123 Va. 157, 96 S.E. 316, 1 A.L.R. 439], the invasion or breach of which could be said to give rise to a cause of action, under the facts here alleged, and the personal representative can have no greater right than had the decedent.

True, as argued in the majority opinion, the proviso in the statute had no reference to the individual. But it does have reference to the cause of action. There must have been a cause of action in the injured person. Indeed in Lawrence v. Seay, supra, this Court, speaking of this very statute, said [179 Ala. 386, 60 So. 939]: "The statute, therefore, clearly shows that it is like a continuation of the *same action* [italics

supplied], if one had been brought by the deceased."

In the cases relied upon by the majority there was a cause of action, there were those who had civil rights subject to invasion. These cases are, therefore, not at all analogous. Here the life convict had no civil rights subject to invasion, and no cause of action arose, to be continued, as was the object of this statute. The prevailing view apparently ignores the forceful language of the Suell and Lawrence cases, supra, though the Court was engaged in a clear and definite construction of our homicide statute, with particular reference to the original purpose. And to reach such a conclusion our comparatively recent case of Ex parte Adams, supra, is overruled.

Nor is the case of Owens v. Auto Mutual Indemnity Company, 235 Ala. 9, 177 So. 133, decided as late as 1937, opinion being by Mr. Justice Thomas, to be so lightly disposed of as does the prevailing opinion in this case. The mere statement that "the effect of the holding in that case was the asserted liability was not within the coverage of the policy", does not tell the whole story. This for the reason that back of that holding and as its foundation was the deliberate conclusion of the court that such non-liability of the insurance company was the result of the fact that the minor himself, under the common law, could not have maintained an action against his parent. In other words there was no right of action in the personal representative under Section 5695, Code of 1923 for the reason that, under the common law, the minor would not have had a right of action against the parent had death not ensued. And this conclusion was reached notwithstanding the statute under which the action was brought did not contain the condition set forth in Section 5696, here involved: "if the testator or intestate could have maintained an action for such wrongful act, omission, or negligence, if it had not caused death".

I respectfully submit that in principle the Owen's case is likewise overruled, if logic and consistency are not to be disregarded. The Owens case has been considered sound law and was so accepted by counsel for appellant, without application for rehearing. The two cases cannot, with due regard to consistency, stand together. The opinion by the Texas Court in Wilson v. Brown, supra, fully supports the Owens case and contains a very full and clear discussion of the question therein involved.

The opinion in the instant case further states the right of action is not "derivative". True, the statute creates a new right. But the very purpose of the statute as often stated in our cases, notably Suell v. Derricott, 161 Ala. 259, 49 So. 895 897, 23 L.R.A., N.S., 996, 18 Ann.Cas. 636, refutes the statement that the right of action is not derivative. It has its very origin in the right of action which the intestate had if death had not intervened. No plainer statement of the purpose of the statute can be found than in the Suell case, where it is said:

"Statutes like ours were clearly intended to correct what was deemed a defect of the common law, that the right of action based on a tort or injury to the person died with the person. Our statute, as it now exists, was evidently in a large degree modeled after the English act of Parliament known as 'Lord Campbell's Act,' passed in the year 1846. It must be observed that the right of action is only given under this statute to the personal representative when the intestate could have maintained an action for the same act had it failed to produce death. A corollary of this is that, if the wrongful act complained of had not produced death, but only an injury, and the person injured could not have maintained an action, then the personal representative cannot maintain an action under the statute when death results. It would therefore seem to follow that all defenses available to the defendant, if the action had been brought by the person injured when death did not result, are available to the defendant in an action brought by the administrator of the person injured for the wrongful death."

All of our cases are to like effect and a holding that the right of action is not only new but wholly independent is, I respectfully insist, in the teeth of the very language of the statute and the decisions giving it construction.

The very case of King v. Henkie, 80 Ala. 505, 60 Am.Rep. 119, cited by the Court in the instant case, points to the same purpose where it is said:

"The purpose of this, and like legislation, was clearly to correct a defect of the common law, by a rule of which it was well settled, that a right of action based on a tort or injury to the person, died with the person injured. Under the maxim 'Actio personalis moritur cum persona,' the personal representative of a deceased person

could maintain no action for loss or damage resulting from his death. * * *

"These statutes, it will be observed, each give a right of action only in cases where the deceased himself, if the injury had not resulted in his death, might have sustained a recovery. They continue, in other words, for the benefit of specific distributees 'a right of action which, at the common law, would have terminated at the death, and enlarge its scope to embrace the injury resulting from the death.' Cooley on Torts, 264."

And, as previously noted, the Court in Lawrence v. Seay, supra, expressly stated of this statute that "it is like a continuation of the same action, if one had been brought by the deceased".

To like effect is the decision in Michigan C. R. Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 196, 57 L.Ed. 417, Ann.Cas. 1914C, 176, where the court said:

"As the foundation of the right of action is the original wrongful injury to the decedent, it has been generally held that the new action is a right dependent upon the existence of a right in the decedent immediately before his death to have maintained an action for his wrongful injury."

And the concluding sentence in 25 C.J.S., Death, § 24, cited and quoted in the majority opinion, is as follows:

"They mean that the wrong in the first instance shall give rise to a cause of action".

And what is a cause of action is well stated by the Virginia court in Osburn, Keister's Adm'r v. Keisler's Ex'rs, 123 Va. 157, 96 S.E. 315, 316, 1 A.L.R. 439, as follows:

"In approaching this question, we have to bear in mind the elementary principle that a right of action at law can in no case exist unless: (a) The plaintiff be found to have had, at the time the alleged cause of action arose, a substantive civil right, the breach or invasion of which right (constituting in the case of a tort a civil wrong) gave rise to a cause of action; and (b) the plaintiff be found to have had at the time the action is instituted a civil remedy by action at law."

But plaintiff's intestate could have had no cause of action by virtue of our statute which declared him civilly dead. Civil death is defined in Holmes v. King, 216 Ala. 412, 113 So. 274, 275, in quotation from Quick v. Western Ry. Co. of Alabama, 207 Ala. 376, 92 So. 608, as follows:

"Civilly dead is the state of a person who, although possessing natural life, has lost all his civil rights and as to them is considered dead. 11 C.J. 794. One result of civil death is incapacity to sue in the courts."

And the Holmes case proceeds to point out that under our statute the estate of one thus civilly dead is subject to administration and distribution as if actually dead in fact. In any event it is clear enough one thus civilly dead is incapacitated from suing in the courts. He had lost all civil rights and of consequence has no such right subject to invasion.

Confessedly here plaintiff's intestate had no right of action, and the facts and circumstances could not give rise to a cause of action for the simple reason there existed no civil rights subject to invasion. To say the homicide statute does not deal with civil rights is to deny this is a civil suit. Of course, no one will contend that this is not a civil suit. As said by the New York Court in Littlewood v. New York, 89 N.Y. 24, 42 Am. Rep. 271, speaking of a statute of this character: "[The] main purpose was to deprive the wrong-doer of the immunity from *civil liability*". (Italics supplied.) And while the damages are punitive, yet in the Sullivan case 59 Ala. 272, the author of the opinion remarks: "The damages, 'tis true, go to the estate of the party slain, and, in effect, are compensatory".

The result of the holding is also that there may be two administrations on one estate, the first while the convict is yet alive and under sentence, and the second after his death by wrongful act. That may work out in the end, but to say the least, it presents a novel situation.

If the right of action under the homicide statute is not derivative then what becomes of the doctrine of contributory negligence? Or would the court say for one moment that one receiving an injury could not accept full settlement therefor and relieve the tort feasor of all further liability, though death should subsequently ensue?

This very question was presented in Southern Bell Tel. & Tel. Co. v. Cassin et al., 111 Ga. 575, 36 S.E. 881, 50 L.R.A. 694, Hill v. Pennsylvania Ry. Co., 178 Pa. 223, 35 A. 997, 35 L.R.A. 196, 56 Am. St.Rep. 754, and Thompson v. Fort

Worth & Rio Grande Ry. Co., 87 Tex. 590, 80 S.W. 990, 1 Ann.Cas. 231, and the holding was in each case that such settlement and release was binding and conclusive and barred any subsequent suit under statutes of this character.

As to the authorities relied upon by the majority the cited case of Savannah & Memphis Railroad Co. v. Shearer, Admr'x, 58 Ala. 672, is merely to the effect that damages recoverable under the homicide statute are punitive and are assessed to prevent homicides. Of course this is now well understood and was considered as a settled proposition in Richmond & Danville Railway Co. v. Freeman, 97 Ala. 289, 11 So. 800, containing full discussion.

I am unable to see wherein these two cases, relied upon by the majority in any manner support the conclusion reached. Stress is laid upon South & North R. R. Co. v. Sullivan, 59 Ala. 272, with quotations from the opinion. But when the quoted language is viewed in the light of the questions there considered, its inapplicability to the present case becomes perfectly plain. There the deceased was a married woman, and the holding was that the personal representative of her estate could maintain the suit as the statute expressly so provided, and that the language of the statute hereinabove quoted had no reference to the individual or person by whom the suit could be maintained. That had been provided for by the naming of the personal representative. And the opinion further states that the language does have reference to the act or omission which would support the action, for that act or omission must give rise to a cause of action. The married woman in the Sullivan case possessed civil rights and a suit was maintainable for the vindication of any invasion of such rights, and whether in her name or jointly with her husband was immaterial.

The point is that the facts and circumstances gave rise to a cause of action and the questions therein discussed had reference only to procedural matters. Certainly nothing said in that case can be construed as overriding the language of the statute and our decisions to the effect that the deceased himself must originally have had a cause of action. Here confessedly he had none. He could have maintained no suit, of which the present one would be a "continuation", to use the language of Lawrence v. Seay, supra.

It seems clear enough the statement in the opinion that the right is not derivative cannot stand. And yet to so hold is necessary to sustain the ruling here. For, if derivative, there can be no right of action because plaintiff's intestate had no such right.

The cases upon which the majority rely were speaking of persons who had a right of action, as they had civil rights subject to invasion, and the language used must, of course, be considered in the light of the facts prevailing in each case. So considered, they have no substantial tendency to support the conclusion reached.

The opinion speaks of the natural right to life, which of course is recognized by all. But a life convict also has the natural right not to be wrongfully injured, not to be made to suffer the loss of eyesight or his limbs or be made an invalid the remainder of his days. These are valuable natural rights likewise. And yet, under our "civil death" statute confessedly he could recover nothing. The difference is one of degree only, and the distinction sought to be made cannot stand in the full light of sound reasoning. It may be the civil death statute is a harsh one and should be modified or repealed. But with that we are not here concerned. As said by Justice Sayre in Johnson v. Johnson, 201 Ala. 41, 77 So. 335, 337, 6 A.L.R. 1031, "It must still be conceded that it is not for the courts by sudden strokes of policy to make deep innovations upon the established law."

It is illogical to say that the injured life convict, maimed and suffering, can have no recovery so long as there remains in his body a flicker of life, but that the moment the flame goes out and life is extinct, there suddenly arises a cause of action in the administrator to recover damages for the very wrong, a redress of which was denied the convict while yet in life. No such result was intended.

With the humanitarian aspect of the prevailing opinion there may be entire sympathy. But that is a matter for consideration of the law makers. It is not our function here.

However we may indulge in refinement of reasoning, the fact remains this is a civil suit (1 C.J. 950, 1 C.J.S., Actions, § 1), to recover damages for the death of

one civilly dead and who had no civil rights subject to invasion.

It is noted that the majority view is entirely without supporting authorities. And indeed the very fact that no such action appears to have been heretofore brought to a court of last resort is to my mind rather persuasive that the legal profession has considered any such suit foreclosed by the language of the statute and opinions of the court construing the same.

But I forego further discussion and respectfully dissent.