(113 So. 274)

HOLMES v. KING.   (8 Div. 910.)

Supreme Court of Alabama.   May 19, 1927.
Rehearing Denied June 15, 1927.

1. Convicts ☞1—Doctrine of "civil death" is generally denied in this country, in absence of statute.

In absence of statute, the doctrine of "civil death" has been generally denied in this country.

2. Convicts ☞3—Property of convict sentenced to life imprisonment passes to his heirs, with right to dispose of property by will within six months after sentence; "civil death" (Code 1923, § 5293).

Under Code 1923, § 5293, providing that convict sentenced to life imprisonment is regarded as civilly dead, but entitling him within six months after sentence to make his will, property of such a convict passes to his heirs, subject to administration and payment of his debts, with right to make a will within six months and to revoke or alter it during such period, after which it is subject to probate as other wills, and beneficiaries take property without awaiting natural death; "civil death," at common law, meaning extinction of civil rights and relations, so that property of person declared civilly dead passes to his heirs as if dead in fact (citing Words and Phrases, "Civil Death;" "Office Found").

Appeal from Circuit Court, Colbert County; Charles P. Almon, Judge.

Bill for accounting and redemption by Stella Mae Holmes, by her next friend, Ada Holmes, against Claude King. From a decree dismissing the bill, complainant appeals. Reversed and remanded.

See, also, 214 Ala. 418, 108 So. 253.

Plea 1 is as follows:

"(1) That on or about the 16th day of February, 1921, while the criminal case of the state of Alabama against the said W. H. Holmes, in which said Holmes was convicted of murder, was pending in the Supreme Court of the state of Alabama on appeal from the circuit court of Colbert county, Ala., Claude King & Son, a partnership composed of Claude King and Emmet King, filed suit in the circuit court of Colbert county in equity against complainant's father, the said W. H. Holmes, her mother, Ada Holmes, and L. C. Neil, and prayed the foreclosure of the several mortgages referred to in the bill of complaint. The said W. H. Holmes and the other respondents in said foreclosure suit all appeared by attorneys and made defense to the said suit. That on or about the 13th day of December, 1922, a final

decree was rendered in said foreclosure suit against the said W. H. Holmes, Ada Holmes, and L. C. Neil by the circuit court of Colbert county, Ala., under the terms of which decree the land described in the bill of complaint was sold and the proceeds arising from the sale of same applied to the payment of the debt secured by said mortgages, all of which respondent pleads in bar of this suit."

Demurrer to plea 1 is as follows:

"(1) The same is no answer to the bill.

"(2) Said plea shows that W. H. Holmes had already been convicted and sentenced to the penitentiary for life before Claude King & Son filed their bill of foreclosure in the circuit court of Colbert county, Ala.

"(3) Because said plea affirmatively shows that the said W. H. Holmes was civilly dead when the said Claude King & Son foreclosed in the circuit court of Colbert county, Ala.

"(4) Because said plea affirmatively shows that W. H. Holmes was civilly dead and therefore could not legally appear and defend the bill for foreclosure filed by Claude King & Son in the circuit court of Colbert county, Ala."

Williams & Chenault, of Russellville, for appellant.

The father of complainant is civilly dead, having been convicted and sentenced to life imprisonment in the penitentiary, and complainant, being an only child, inherited his property, subject to the rights of her mother. Code 1923, §§ 5293, 7365; Quick v. Western Ry., 207 Ala. 376, 92 So. 608; 11 C. J. 795. It was error to overrule demurrer to plea 1. Breeding v. Grantland, 135 Ala. 497, 33 So. 544.

Kirk & Rather, of Tuscumbia, for appellee.

Civil death does not operate to divest the offender of title to his lands. 2 Words and Phrases, 1195; Avery v. Everett, 110 N. Y. 317, 18 N. E. 148, 1 L. R. A. 264, 6 Am. St. Rep. 368; Platner v. Sherwood, 6 Johns. Ch. (N. Y.) 118; Coffee v. Haynes, 124 Cal. 561, 57 P. 482, 71 Am. St. Rep. 99; Nichols v. Nichols, 2 Plow. 486; Griffith v. Pritchard, 5 Barn. & Ad. 765; 1 Chitty Cr. L. 725; Davis v. Duffie, *42 N. Y. (3 Keyes) 606, 1 Abb. Dec. 489; Kynnaird v. Leslie, L. R. 1 C. P. 400; Baltimore v. Chester, 53 Vt. 315, 38 Am. Rep. 677. Plea 1 sets up a complete defense. Harmon v. Bowers, 78 Kan. 135, 96 P. 51, 17 L. R. A. (N. S.) 502, 16 Ann. Cas. 121; State v. Houston, 103 N. C. 383, 9 S. E. 699.

BOULDIN, J. The bill is filed for accounting and redemption of real estate from a mortgagee in possession.

Complainant, a minor suing by next friend, claims as heir at law of Will H. Holmes, who was convicted of murder in the first degree and sentenced to life imprisonment and is now serving such sentence.

Code, § 5293, reads:

"A convict sentenced to imprisonment for life is regarded as civilly dead, but may, nevertheless, at any time within six months after his sentence, make and publish his last will and testament."

The theory of the bill is that upon the civil death of the father, in the absence of a will, the equity of redemption descended to the heir the same as in case of natural death.

The construction of this statute, dating back to Clay's Digest, p. 442, § 28, seems to have been considered only in the case of Quick v. Western Ry. of Ala., 207 Ala. 376, 92 So. 608. That case was an action for personal injuries received by a life convict. The court said:

"Civilly dead is the state of a person who, although possessing natural life, has lost all his civil rights and as to them is considered dead. 11 C. J. 794. One result of civil death is incapacity to sue in the courts."

Defining corruption of blood and forfeiture of estate, inhibited by section 19 of the Constitution, the court pointed out that this statute does not work a forfeiture of estate. "Civil death" of a person in the literal sense, as known at common law, was the extinction of civil rights and relations, so that his estate passed to his heirs as if dead in fact.

This consequence seems to have been applied to three classes of cases, viz., monks or members of religious orders who voluntarily renounced all temporal and civil relations among men, persons permanently banished from the realm, and persons convicted of treason or felony, who adjured the realm upon conditional pardon.

"Civil death" in a more limited sense followed as an incident to attainder upon sentence for treason or felony. The corruption of blood forbade either the receipt or transmission of property by inheritance, and estates were forfeited to the crown. But a further rule of the common law required that there be no forfeiture of estates of aliens or persons attainted until the fact of alienage or attainder was established by a special proceeding, and the king's right to the property made a solemn matter of record. Until this proceeding and results known as "office found" the title remained in the convict. This situation gave rise to the rule that until office found the felon could hold and alienate lands as against all persons save the king, or could pass them by will or by inheritance.

Still, the incidents of civil death resulting directly from sentence for treason or felony gave the party no standing in the courts to maintain an action; he could contract, but had no remedy to enforce his contract. This brief summary of the common-law status seems to be well authenticated. 11 C. J. 794; 13 C. J. 913–915; 2 Words and Phrases, p. 1195, "Civil Death"; 6 Words and Phrases, p. 4931, "Office Found"; Baltimore v. Chester, 53 Vt. 315, 38 Am. Rep. 677; Troup v. Wood, 4 Johns. Ch. (N. Y.) 228, 248; Platner

v. Sherwood, 6 Johns. Ch. (N. Y.) 118; Avery v. Everett, 110 N. Y. 317, 18 N. E. 148, 1 L. R. A. 264, 6 Am. St. Rep. 368, and note; Hill v. Guaranty Trust Co., 163 App. Div. 374, 148 N. Y. S. 601; In re Donnelly, 125 Cal. 417, 58 P. 61, 73 Am. St. Rep. 62; Commonwealth v. Clemmer, 190 Pa. 202, 210, 42 A. 675; Gray v. Stewart, 70 Kan. 429, 78 P. 852, 109 Am. St. Rep. 461; Williams v. Shackleford, 97 Mo. 322, 11 S. W. 222; 1 Cooley's Black. Com. 132; 3 Black. Com. 259; Co. Lit. § 199, note; 1 Chitty, Cr. Law, 724.

[1] In the absence of statute, the doctrine of "civil death" has been generally denied in this country. Quick v. Western Ry., 207 Ala. 376, 92 So. 608; Byers v. Sun Savings Bank, 41 Okl. 728, 139 P. 948, 52 L. R. A. (N. S.) 320, Ann. Cas. 1916D, 222, where full citations are found.

Looking to the decisions on statutes of like character with ours, the early case of Troup v. Wood, 4 Johns. Ch. (N. Y.) 228, 248, dealt with a statute of New York (Laws 1799, c. 57), declaring that persons sentenced to imprisonment for life "shall be deemed and taken to be civilly dead, to all intents and purposes in the law." Chancellor Kent, construing this statute, gave full effect to the term "civilly dead" as in cases of banishment or abjuration and held that property passed to the heir or personal representative.

In the later case of Platner v. Sherwood, 6 Johns. Ch. (N. Y.) 118, Chancellor Kent receded from that part of the opinion in Troup v. Wood, supra, holding that at common law a sentence for felony, without office found, had the full effect of civil death as to property ownership, and that the statute of 1799 did not apply because the sentence antedated the statute. But he did not recede from his construction of the statute as applied to cases governed thereby.

In Avery v. Everett, 110 N. Y. 317, 18 N. E. 148, 1 L. R. A. 264, 6 Am. St. Rep. 368, decided in 1888, the court reviewed these decisions of Chancellor Kent as well as the common law, and finally declared it not necessary to disagree with Chancellor Kent as to the effect of the comprehensive language of the statute of 1799, and rests the decision on the fact that the Revised Statutes had omitted the words, "to all intents and purposes in the law."

In Re Nerac (1868) 35 Cal. 392, 95 Am. Dec. 111, construing a statute saying, "the person sentenced to such imprisonment for life shall thereafter be deemed civilly dead," the court said:

"If the convict be sentenced for life, he becomes civiliter mortuus, or dead in law, in respect to his estate, as if he [were] dead in fact."

In Coffee v. Haynes, 124 Cal. 561, 57 P. 482, 71 Am. St. Rep. 99, it is said the above holding in the Nerac Case was not necessary to a decision. A different rule was announced because of a statute making a life convict capable "of making and acknowledging a sale or conveyance of property."

A statute of Missouri, declaring a convict sentenced for life "shall thereafter be deemed civilly dead," provides, also, for the administration of his estate as if dead in fact. Williams v. Shackleford, 97 Mo. 322, 11 S. W. 222.

The Kansas statute provides for administration and distribution of the estate of a life convict as if he were naturally dead. It proceeds on the assumption he is civilly dead. Gray v. Stewart, 70 Kan. 429, 78 P. 852, 109 Am. St. Rep. 461. Some states make provisions for caring for the estate of a convict for a term of years through trustees.

In general the American courts, in keeping with the spirit of our institutions and constitutional guaranties, tend to get away from the vigorous features of the common law. As to the effect of statutes declaring a life convict civilly dead, without more, the courts have been much influenced by the leading New York case of Avery v. Everett, supra.

[2] With these lights we must construe our statute brought down in practically the same terms for three quarters of a century. In so doing, we cannot ignore the effect of the last clause of section 5293, Code of 1923. The statute says he is "civilly dead; nevertheless," he may make his will within six months. Thus, it appears the lawmakers had in mind the disposition of property after "civil death." If the convict still lives for the purpose of owning and disposing of property, why this clause? Why limit the making of the will to 6 months after the sentence? In the original statute it was 30 days. If he is to own the property through natural life, though civilly dead, there could be no reason why he should not will it at any time. Again, why limit the statute to the making of a will, instead of the general power to alienate as in California?

If we give "civil death" the limited meaning accorded it before office found at common law, what is the situation? He is effectually isolated and cut off from any personal possession and enjoyment. He can bring no action against any one for trespass, ejectment, or otherwise. He can make no contract which he can in law enforce.

The strange anomaly of a contract without mutuality, the subjection to suit without power to bring one, so strip property of its incidents as to virtually cast it adrift. This would be accentuated by the clause limiting disposition to a will. We are impressed such a situation was never in the contemplation of our lawmakers.

We hold that as to property of a life convict, the term "civilly dead" has the effect the words import; that a life sentence is given the effect of entry into religious orders or banishment at common law; that his prop-

erty upon sentence descends to his heirs subject to administration and the payment of his debts; that for six months, a period less than that required for administration, the convict is still accorded the right by will to name the persons who shall take subject to the payment of his debts. The power to make a will implies the power to revoke or alter it. So, it is ambulatory during that period. But at the end of that time the will is subject to probate as other wills, and the beneficiaries take the property without awaiting a natural death.

At first thought, it seems anomalous to think of a person making a will after he is dead. But the idea of "civil death" is a creature of law, and may have such incidents as the law declares. Such was the case at common law.

The entire failure to provide any means of caring for the estate of a life convict, in the light of rules above stated, argues that it was intended as one of the incidents of a life sentence that "civil death" result, and his property be disposed of by the orderly methods of administration, for the benefit of those on whose behalf an estate is accumulated.

To undertake at this day to deal with it as at common law before office found could result only in waste, an invitation to wrongdoing in others, and defeat of the rightful claims of creditors and heirs.

It follows the decree sustaining the demurrer to the original bill and dismissing it out of court was error. The demurrer to plea 1 should have been sustained.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.