36 So.2d 316

**GRAHAM v. GRAHAM.**

**6 Div. 647.**

Supreme Court of Alabama.

April 8, 1948.

Rehearing Denied July 31, 1948.

Silberman & Silberman and M. B. Grace, all of Birmingham, for appellant.

Beddow & Jones, G. Ernest Jones and G. Ernest Jones, Jr., all of Birmingham, for appellee.

**LIVINGSTON, Justice.**

Bill in the nature of a bill of review seeking to review, reverse and vacate a decree made and entered by the Circuit Court of Jefferson County, in Equity, on, towit, April 28, 1947, forever dissolving the bonds of matrimony theretofore existing between appellee, Mamie Graham, and appellant, James William Graham, for and on account of cruelty of the husband. In, and as a part of, said decree the wife was awarded certain real estate and personal property, jointly owned by the parties, in lieu of permanent alimony.

The bill of complaint, now before us, is founded upon the alleged fraud of appellee in inducing appellant to marry her, and fraud on the court in the concoction or procurement of the decree of divorce. It is alleged, in substance, that at the time appellant and appellee intermarried in Jefferson County, Alabama, towit, May 31, 1941, appellee, was the lawful wife of one Robert Hendricks; that appellee and said Robert Hendricks were lawfully married in Pike County, Alabama, in 1935 or 1936; that in the year 1937 the said Robert Hendricks was convicted in Pike County of the offense of murder in the first degree, and his punishment fixed at life imprisonment in the penitentiary; that appellee told him (appellant) that she was legally divorced from said Hendricks, and that she possessed the legal right to marry appellant; that appellee was not divorced from said Hendricks; that said Hendricks was then living, although he was serving a life sentence for murder; that appellee well knew that said Hendricks was still living, and that she was then his lawful wife; that said representations were made to deceive, and did deceive appellant; that appellee knew that at the time she filed suit for divorce against him (appellant) she was not his lawful wife; that she testified falsely in the divorce proceedings against appellant, in that she testified that she and appellant were married; that her conduct in the premises constituted fraud on the court.

A serious question is the effect of our "civil death" statute on the marital status.

Section 3, Title 61, Code of 1940, provides:

"A convict sentenced to imprisonment for life is regarded as civilly dead, but may, nevertheless, at any time within six months after his sentence, make and publish his last will and testament."

This case is one of first impression in this jurisdiction. Decisions from other jurisdictions are helpful only by way of analogy, because of the difference in the "civil death" statutes of those states in which such statutes are still in force. No case is cited, nor has our search revealed a case directly in point.

The construction of section 3, supra, dating back to Clay's Digest, page 442, section 28, seems to have been considered only in the following cases: Quick v. Western Ry. of Alabama, 207 Ala. 376, 92 So. 608; Holmes v. King, 216 Ala. 412, 113 So. 274; Vann v. Rogers, 225 Ala. 186, 142 So. 539; Wright v. Price, 226 Ala. 468, 147 So. 675, and Breed v. Atlanta, B. & C. R. R. Co., 241 Ala. 640, 4 So. 2d 315.

Quick's case against the railroad company was an action for personal injuries received by a life convict. It was said [207 Ala. 376, 92 So. 609]: "Civilly dead is the state of a person who, although possessing natural life, has lost all his civil rights and as to them is considered dead. 11 C.J. 794. One result of civil death is incapacity to sue in the courts." It was held that section 3, supra, was not violative of sections 10, 13 and 19 of the Alabama Constitution of 1901, and that Quick could not maintain the action.

It was held in Vann v. Rogers, supra, that statutes of limitation were not suspended as to one sentenced to life imprisonment in the state penitentiary, although he was pardoned by the governor with restoration of his civil and political rights. It was there said, [225 Ala. 186, 142 So. 540] "Had plaintiff suffered a natural death after the accrual of his right of action, no suspension of the statute of limitations would have followed, and of course by like reasoning the same result follows from his civil death under section 5293."

The case of Wright v. Price, supra, was a proceeding for the adoption of a minor.

The only reference to section 3, supra, is as follows: "While the mother of this child was dead at the time this petition was filed, her father is still living, but is confined in the penitentiary of this state under a sentence thereto for his natural life, and, therefore, is civilly dead. Code, § 5293."

Breed's case, supra, was an action by an administrator for the wrongful death of a life convict, and was brought under the provisions of our homicide act, section 123, Title 7, Code of 1940. Defendant insisted that the action was barred by the "civil death" statute. It was held, [241 Ala. 640, 4 So.2d 317] "The right of action which the statute gives is a new right, not derivative nor the right of succession to the person slain. It is not a right of property, and the personal representative in bringing and prosecuting the suit acts as an agent of legislative appointment for the effectuation of the public policy it declares—the prevention of homicides. Holt v. Stollenwerck, 174 Ala. 213, 56 So. 912; White v. Ward, 157 Ala. 345, 47 So. 166, 18 L.R.A., N.S., 568; Kuykendall v. Edmondson, 205 Ala. 265, [268], 87 So. 882." And, further, "Code, § 5696 (homicide act, section 123, supra), does not deal with the civil rights of persons whose death is caused by 'wrongful act, omission, or negligence.' It deals with the natural right of life which is in no way affected by a conviction and sentence to life imprisonment. The very sentence and judgment of the court imposing it recognizes and confirms the right of the convict to life. The purpose and scope of our statute, Code 1923, § 5696 (now section 123, Title 7, Code of 1940), whatever the rule may be elsewhere, is to protect human life; to prevent homicide by wrongful act, omission or negligence of persons and corporations, their agents and servants; and to stimulate diligence in the protection of the natural right to live, without respect to the personal condition or disability of the person so protected." Further, concerning the qualifying provision in section 123, supra: "If the testator or intestate could have maintained an action for such wrongful act, omission or negligence, if it had not caused death," it was said, "stated in the language of the authorities, that

qualifying provision 'was intended to declare the character of act or omission which would support the action; not the person by whom it could be maintained.' South & N. A. R. Co. v. Sullivan, 59 Ala. 272, 281."

The only point decided in the Breed case, supra, is that the common law disability of the intestate, springing from his conviction and sentence for life, does not preclude the plaintiff as administrator of his estate from maintaining an action for his death.

The foregoing authorities are of little assistance in resolving the question here presented.

The case of Holmes v. King, supra, is more helpful, though not directly in point. The bill of complaint, brought by a minor suing by his next friend, sought an accounting and redemption of real estate from a mortgagee in possession. The minor claimed as heir at law of Will H. Holmes, who was convicted of murder in the first degree and was then serving a sentence of life imprisonment. The theory of the bill was rested upon the civil death of the father who had made no will, and the descent of the equity of redemption to the minor heir, the same as in case of natural death. Mr. Justice Bouldin, after reviewing authorities from other jurisdictions, said [216 Ala. 412, 113 So. 276]:

"If we give 'civil death' the limited meaning accorded it before office found at common law, what is the situation? He is effectually isolated and cut off from any personal possession and enjoyment. He can bring no action against any one for trespass, ejectment, or otherwise. He can make no contract which he can in law enforce.

"The strange anomaly of a contract without mutuality, the subjection to suit without power to bring one, so strip property of its incidents as to virtually cast it adrift. This would be accentuated by the clause limiting disposition to a will. We are impressed such a situation was never in the contemplation of our lawmakers.

"We hold that as to property of a life convict, the term 'civilly dead' has the effect the words import; that a life sentence is given the effect of entry into religious orders or banishment at common law; that his property upon sentence descends to his heirs subject to administration and the payment of his debts; that for six months, a period less than that required for administration, the convict is still accorded the right by will to name the person who shall take subject to the payment of his debts. The power to make a will implies the power to revoke or alter it. So, it is ambulatory during that period. But at the end of that time the will is subject to probate as other wills, and the beneficiaries take the property without awaiting a natural death.

"At first thought, it seems anomalous to think of a person making a will after he is dead. But the idea of 'civil death' is a creature of law, and may have such incidents as the law declares. Such was the case at common law."

Subdivision 4 of section 20, Title 34, Code of 1940, provides that "imprisonment in the penitentiary of this or any other state, for two years, the sentence being for seven years or longer," is cause for a divorce.

We must accord to the words "or longer" in the foregoing statute the inclusion of a life sentence. If such was not the legislative intent, it would have been simple and easy to have excluded it by appropriate language. Subdivision 4, supra, construed in pari materia with the civil death statute, convinces us that the legislature did not intend that the civil death statute should have the effect of dissolving the marital status. Our cases have not extended the doctrine to that limit, and we know of no case in other jurisdictions which has done so. It may be well assumed that in some cases the non-offending spouse would not want a dissolution of the marriage, though the other was sentenced to life imprisonment. Our decisions have only dealt with civil and property rights. We hold that a sentence to life imprisonment does not dissolve the marital status, and in doing so are fully aware of the anomalies created. On the other hand,

we are not unmindful of similar or like results attended upon a contrary holding. Whether changed conditions have destroyed the usefulness of the civil death statute is not for the courts to say: that is a legislative function.

Other grounds of appellee's demurrer take the point that the facts alleged do not show fraud in the concoction or procurement of the decree dissolving the bonds of matrimony existing between the parties.

■ In order to secure equitable relief in such case, it must appear that fraud was practiced in the very act of obtaining the judgment, and that it was extrinsic or collateral, as distinguished from intrinsic fraud. Bolden v. Sloss-Sheffield Steel & Iron Co., 215 Ala. 334, 110 So. 574, 49 A. L.R. 1206; Farrell v. Farrell, 243 Ala. 389, 10 So.2d 153, and cases there cited. The rule is stated in 31 Am.Jur. sections 654, 655, pages 230–232, as follows:

"654. The acts for which a court of equity will, on account of fraud, grant relief from a judgment have relation to extrinsic or collateral fraud; intrinsic fraud is not sufficient for equitable relief. Fraud has been regarded as intrinsic, within the meaning of this rule, where the fraudulent acts pertain to an issue involved in the original action, or where the acts constituting the fraud were, or could have been, litigated therein. Accordingly, fraud cannot properly be said to be extrinsic, so as to warrant relief from a judgment based thereon, where the court rendering the judgment had before it the same issue of fraud on the same essential facts. On the other hand, fraud has been regarded as extrinsic or collateral, within the meaning of the rule here under consideration, where it is one the effect of which prevents a party from having a trial or from presenting all of his case to the court, or where it operates upon matters pertaining, not to the judgment itself, but to the manner in which it is procured, so that there is not a fair submission of the controversy. Fraud which induces an adversary to withdraw his defense, or prevents him from presenting an available defense or cause of action in the action in which the judgment is obtained, has been regarded as a proper ground for equitable relief against the judgment.

"655. Equitable relief from a judgment is denied in cases of intrinsic fraud, on the theory that an issue which has been tried and passed upon in the original action should not be retried in an action for equitable relief against the judgment, and that otherwise litigation would be interminable; relief is granted for extrinsic fraud on the theory that by reason of the fraud preventing a party from fully exhibiting and trying his case, there never has been a real contest before the court of the subject matter of the action."

In Farrell v. Farrell, supra, we held that [243 Ala. 389, 10 So.2d 156]: "It is also elementary that one who seeks relief from a judgment or decree of a court of competent jurisdiction must aver and prove that he was himself free from fault or negligence in suffering the judgment or decree to be entered. Evans v. Wilhite et al., 167 Ala. 587, 52 So. 845; Wright v. Wright, supra [230 Ala. 35, 159 So. 220]. * * *

"A judgment or decree is not binding on anyone unless the court rendering the same had jurisdiction of the parties and the subject matter of the cause. The court did have jurisdiction of the parties. The jurisdiction of the subject matter is the power to adjudge concerning the general question involved, and if a bill states a case belonging to a general class over which the authority of the court extends, the jurisdiction of the court attaches and no error committed by the court can render the judgment void. Miller v. Rowan, 251 Ill. 344, 96 N.E. 285; Sim v. Sim, 247 Ill. App. 321."

■ In the instant bill, it is alleged that the appellant, who was the respondent in the divorce proceedings, was personally served with process; that he entered a general appearance and interposed a demurrer to the bill exhibited against him; that his demurrer was overruled; that he did not plead further, but suffered a decree

pro confesso to be entered against him, and upon proof a final decree.

The averments 'of the bill now before us do not show extrinsic or collateral fraud, nor are they sufficient to acquit appellant of negligence in suffering the decree of divorce to be entered against him.

The demurrer was properly sustained.

Affirmed.

All the Justices concur.

SIMPSON, Justice (concurring specially).

I concur in the foregoing opinion, but with respect to the civil death statute I should like to add the observation that there are but few remaining states which still have such statutes and the announced law under them is of necessity full of casuistries and potential of much injustice, as is evident from our own decisions referred to in the above opinion. Typical of the supreme injustice which may be wrought under the statute is the Holmes v. King case, quoted from in the foregoing opinion, where was the holding that a man incarcerated under a life sentence and thus civilly dead was subject to have his estate administered on as if he were in fact deceased. The effect of such a holding is to confiscate such a person's estate to his legal heirs and if the convict should later be shown to be innocent and a full pardon granted him, he thus would have been wrongfully divested of his property.

I think it regrettable that judicial obeisance should still be required to be paid to this excrescence of the common law. Our own cases point up the disservice of such a statute in our modern jurisprudence. In my opinion, the situation calls for legislative action looking towards the law's repeal.

BROWN and STAKELY, JJ., concur in the foregoing.