101 So.2d 287

**Emma WILKERSON et al.**

v.

**M. L. MOORER.**

**1 Div. 727.**

Supreme Court of Alabama.

March 6, 1958.

Grady W. Hurst, Jr., Chatom, for appellee.

Holberg, Tully & Mobley, Mobile and Wallace P. Pruitt, Chatom, for appellants.

LAWSON, Justice.

This is an appeal from a final decree of the circuit court of Washington County, in equity.

The 75-acre tract of land situated in Washington County, which is the subject of this litigation and to which we will sometime refer hereafter as the suit property, was sold to M. C. Stallworth, Jr., in April, 1941, at a sale for division of proceeds between the alleged joint owners, F. L. Wilkerson and his brother, Albert Wilkerson. The bill or petition seeking the sale of the suit property for division was filed in the probate court of Washington County by F. L. Wilkerson against Albert Wilkerson and the latter's wife, Emma. At the time the suit property was sold for division Albert Wilkerson was serving a life sentence in a penitentiary of this state. He received one half of the sale price, less expenses. The property sold for $150.

After cutting some of the timber Stallworth, on July 25, 1942, executed a quitclaim deed wherein he conveyed the suit property other than the gas, oil and mineral rights to one Tillman Weaver. Weaver conveyed the property to Marvin and Anna Rivers on October 16, 1945, who in turn conveyed to M. L. Moorer on November 13, 1945. The deed from Weaver to Marvin and Anna Rivers and their deed to Moorer excepted the gas, oil and mineral rights.

On May 27, 1946, the tract of land was sold for taxes as the property of Tillman Weaver. W. D. Wood was the purchaser at the tax sale. Wood received a tax deed from the judge of probate of Washington County on May 28, 1949. W. D. Wood and wife conveyed the property, other than an interest in the mineral rights, to Bob Everett on July 5, 1949.

On February 5, 1952, the original bill in this case was filed in the circuit court of Washington County, in equity, by the wife and children of Albert Wilkerson against Bob Everett, M. L. Moorer and M. C. Stallworth, Jr.

The complainants sought to have the trial court decree in effect that they are the owners of the suit property on the theory that Albert Wilkerson was the sole owner of the property prior to his civil death, which occurred on April 11, 1939, and that upon his civil death the property descended to complainants and since they were not parties to the sale for division, the purchaser at the sale, M. C. Stallworth, Jr., and M. L. Moorer, who claims under Stallworth, acquired no title to the suit property. The complainants also set up the invalidity of the tax sale at which W. D. Wood was the purchaser.

Within a few weeks after the original bill was filed, the respondent Bob Everett conveyed his interest in the suit property to W. D. Wood. The bill was thereafter amended so as to make Wood a party respondent

Demurrers interposed by the respondents were overruled in August of 1952.

On September 3, 1952, Everett and Wood filed a joint answer which they made a cross bill as to the complainants in the original bill. They averred Wood's purchase at the tax sale, his conveyance to Everett and the latter's reconveyance to Wood; that Wood and his predecessor in title, Everett, had been in the "open, notorious, adverse, and peaceable possession" of the property under color of title for more than ten years; that Albert Wilkerson was pardoned and his civil and political rights restored prior to the time the original bill was filed; and that at the time of the sale for division Albert Wilkerson received a reasonable consideration for any interest he may have had in the suit property. The prayer of the cross bill was substantially that the court decree that W. D. Wood is the owner of the suit property.

On September 5, 1952, the respondent Stallworth filed an answer wherein he denied the material averments of the complaint and averred that Albert Wilkerson never had any title to the suit property; that he and "his associates in title have been in possession under claim of ownership openly, notoriously, adversely, and exclusively for more than ten years prior to the filing of this bill of complaint"; that although he conveyed the surface rights to the property he retained title to the gas, oil and mineral rights, which he still claims "adversely, against all the world."

Shortly after the original bill was filed the respondent Moorer filed his "plea in abatement" in which the other respondents later joined. Final action on this so-called "plea in abatement" was not taken until September 24, 1954, and Moorer did not answer the original bill until February 2, 1955, when he filed a pleading which purports to be (1) an answer to the bill as amended; (2) an answer to the cross bill filed by Everett and Wood, although Moorer was not made a cross respondent to that cross bill; and (3) a "cross bill of complaint" wherein the complainants in the original bill and Everett and Wood were named as cross respondents.

The effect of that part of the pleading filed on February 2, 1955, which Moorer describes as his answer to the original bill is in effect nothing more than a denial of the bill's material averments. Inasmuch as Moorer was not a party to the cross bill filed by Everett and Wood, we see no occasion to refer to the averments of his so-called answer to that cross bill. In the part of the pleading filed on February 2, 1955, which Moorer designated his "cross bill of complaint" he set out his source of paper title, that is, the sale for division wherein Stallworth was the purchaser, the conveyances from Stallworth to Weaver, from Weaver to the Riverses, and from the Riverses to himself. He alleged that he and his predecessors in title "have been in the actual, peaceable, adverse possession of the above described land [suit property] under color of title as above dersigned (sic) and claiming to own the same for more than ten years next before the filing of complaint in this cause"; and that he was in the peaceable possession of the property "pending this suit." In his "cross bill of complaint" Moorer also alleged that the tax sale at which Wood was the purchaser was invalid for certain reasons not necessary to set out here. He offered to redeem from the tax sale. Moorer further alleged in his "cross bill of complaint" that the complainants' right "to recover the above described lands, if any they had, is barred by laches." Moorer offered to do equity and prayed that the trial court decree that he is the owner of the suit property and that he be permitted to redeem from the tax sale.

A demurrer filed by Wood to Moorer's cross bill was overruled on September 21, 1955, on which day the following events also occurred. Wood answered Moorer's cross bill by denying its material averments. Although he had previously answered the original bill as amended, Stallworth filed another "plea and answer" wherein he denied the allegations of that bill. He also asked that he be permitted to join "with the other respondents in their answer and cross bill." We assume Stallworth intended to join only in the cross bill of Moorer, for his interests and those of Everett and Wood were opposed. The complainants in the original bill filed the following answer: "Comes the Complainants by their Attorney, Wallace P. Pruitt, and for plea and answer to the Cross-Bill filed by the Respondents denies the allegation of the Cross-Bill, and demands strict proof of the same." The taking of testimony before the trial court was begun.

Testimony was taken orally before the trial court on at least seven different oc-

casions, the last being on September 19, 1956. During the course of the taking of testimony the bill was amended so as to claim damages for the cutting of timber.

On January 18, 1957, the trial court rendered a final decree wherein he found that at the time of the sale for division in the probate court "F. L. Wilkerson and Albert Wilkerson owned and claimed the land jointly, and that Albert Wilkerson received one-half of the proceeds of the sale, less the costs of court." In part the trial court decreed:

"1. That relief prayed for in the amended bill is denied.

"2. That Dr. M. L. Moorer is the owner of the [suit property] and that M. C. Stallworth, Jr., is the owner of the oil, gas, and mineral rights thereof.

"3. That Moorer and Stallworth are hereby granted the right to redeem from the tax sale to W. D. Wood.

\*　\*　\*　\*　\*　\*

"6. That the relief prayed for in the cross-bill of W. D. Wood be and is hereby denied."

From that decree the complainants have appealed to this court. W. D. Wood has not appealed or cross-assigned errors. Although cited to appear in this court if he so desired he has not done so. The only one of the respondents to the original bill as amended who appears in this court as an appellee is M. L. Moorer.

The extent of the interest which Albert Wilkerson owned in the suit property prior to April 11, 1939, the day on which he was sentenced to imprisonment for life in the penitentiary of this state, is difficult to determine from the record before us, but we think it clear that he did own some interest by virtue of the deed from Will Byrd bearing date of May 5, 1931. However,

when Albert Wilkerson received a sentence of life imprisonment there came into operation the provisions of § 3, Title 61, Code 1940, which reads: "A convict sentenced to imprisonment for life is regarded as civilly dead, but may, nevertheless, at any time within six months after his sentence, make and publish his last will and testament."

Inasmuch as Albert Wilkerson did not within six months after his sentence make and publish his last will and testament, his civil death was as in cases of intestacy. He owned no interest in the suit property at the time of the sale in April, 1941. His interest had descended to his heirs. Holmes v. King, 216 Ala. 412, 113 So. 274. See Breed v. Atlanta, B. & C. R. Co., 241 Ala. 640, 4 So.2d 315; Graham v. Graham, 251 Ala. 124, 36 So.2d 316. The case last cited is authority for the proposition that the civil death of Albert Wilkerson did not dissolve his marriage to Emma Wilkerson, one of the complainants in this case. However, we lay aside as unnecessary to a decision of this case the question as to whether Emma upon the civil death of her husband acquired the same rights in his property as if he had died a natural death. If she did not acquire such rights, then Albert Wilkerson's interest in the property descended to his several children absolutely and in fee and, as we have heretofore indicated, those children are parties complainant.

We hold that the trial court was in error in finding that Albert Wilkerson owned an interest in the suit property at the time it was sold to Stallworth.

It follows, therefore, that since Albert Wilkerson did own some interest in the suit property prior to his civil death, which interest had descended to his heirs, the partition sale to which the heirs were not made parties could not operate to vest in the purchaser at that time the interest which had formerly belonged to Albert Wilkerson.

Counsel for appellee seems to agree that Albert Wilkerson had no interest in the suit property at the time of the sale for division, but argues that such a finding does not affect the correctness of the decree here under review. We quote from appellee's original brief:

"This Appellee insists that the trial court was cognizant of the civil death of Albert Wilkerson not only at the time of the final decree but also from the filing of the bill of complaint until the final decree. The proceedings throughout so indicate.

"But having recognized the civil death, the trial court found the equity of the case to be to decree title in M. C. Stallworth, Jr., and M. L. Moorer. On what ground or reason we do not know but we do know that the court had any one of several reasons for so doing. Briefly they are:

"1. Appellants unclean hands.

"2. Appellants failure to prove any title in Albert Wilkerson.

"3. Appellants laches for 11 years in bringing suit.

"4. Appellee's adverse possession under color of title for 11 years.

"5. Failure of Appellants to prove by legal evidence to be exempt from laches or adverse possession."

If the trial court had merely found that Albert Wilkerson had owned some interest in the suit property prior to his civil death we might not be in disagreement with counsel for appellee as to the effect of the court's finding. But as we have heretofore shown, the finding was that Albert Wilkerson owned an interest in the suit property at the time it was sold for division. We cannot say in view of that finding that the trial court did not intend to hold that the sentence to life imprisonment did not divest Albert Wilkerson of his interest in the suit property.

The decree under review on its face does not show any reason why the trial court denied the relief sought by the complainants and dismissed their bill and decreed that Moorer was the owner of the surface rights in the suit property and that Stallworth was the owner of the oil, gas and mineral rights therein except that Albert Wilkerson's interest in the suit property was legally acquired by Stallworth at the partition sale in April of 1941.

Appellee's reference to the doctrine of unclean hands is based on the fact that the complainants introduced in evidence a deed which they contended was signed by F. L. Wilkerson in 1933 conveying his interest in the property to Albert Wilkerson. Appellee contends in brief that the deed sought to be introduced was a forgery and for that reason complainants were denied relief because of unclean hands. The trial court in his decree did observe that he was not impressed by that deed, the original of which was never produced; however, there is nothing in the decree to indicate that the trial court felt that the doctrine of unclean hands was the basis of the denial of relief to the complainants.

The complainants, as we have heretofore observed, did prove that Albert Wilkerson had title to some interest in the suit property, although we are frank to say that we are not impressed from the record before us that he owned an undivided one-half interest in the property.

There is nothing in the decree to indicate that it was based on the doctrine of laches. Most of the children of Albert Wilkerson were minors at the time the land was sold for division in 1941 and one of them was a minor at the time this suit was commenced.

Much evidence was presented by the several parties interested in this litigation concerning the possession of the suit property since the sale in April, 1941. There was testimony offered on behalf of the appellee

which would tend to show his possession and that of his predecessors in title, although it is without dispute that neither he nor Stallworth has ever paid any taxes on the property. On the other hand, there is evidence equally as strong going to show that Wood and his predecessor in title have been in possession of the property since the tax sale in 1946. They did assess and pay taxes. True, these witnesses testified orally before the trial court and he was in a much better position to pass on the credibility of the witnesses than this court. If there was anything in this decree to indicate that the trial court based its decree on a finding of adverse possession, we would hesitate to say that there was error in such finding. However, there is no such indication and our view of the record is that the evidence presented by Wood, as well as that presented by the complainants, creates considerable doubt as to whether or not the appellee and Stallworth have been in possession of the suit property in such a manner as to constitute adverse possession under color of title.

We hesitate in view of the confusing state of this record to venture any guess as to the reason why the trial court decreed that the suit property was owned by Moorer and Stallworth, in view of the clear indication in the decree that such holding is based on the court's finding that Albert Wilkerson and his brother, F. L. Wilkerson, jointly owned the suit property at the time Stallworth purchased it at the sale for division. We are of the opinion that justice in this case can best be achieved by reversing the decree of the trial court and remanding the cause for further proceedings wherein the issues may be more clearly defined.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON, GOODWYN, MERRILL and COLEMAN, JJ., concur.