270 So.2d 815

In re Joyce CLEMENTS, as Director of the Jefferson County Department of Pensions and Security, et al.

v.

Honorable William C. BARBER as Judge of the Circuit Court of Jefferson County, Alabama, and as Judge of the Tenth Judicial Circuit of Alabama.

Ex parte Joyce Clements, as Supervisor of the Jefferson County Department of Pensions and Security, et al.

Civ. 65.

Court of Civil Appeals of Alabama.

Dec. 14, 1972.

William J. Baxley, Atty. Gen., and Clyde P. McLendon and Jamie L. Pettigrew, Asst. Attys. Gen., for petitioners.

268

Chriss H. Doss, Birmingham, for William C. Barber, as Judge of the Circuit Court of Jefferson County, Alabama, respondent.

BRADLEY, Judge.

A petition seeking a writ of prohibition, mandamus or other extraordinary relief has been filed in this court by the parties named in the caption as petitioners, to be directed to the above named respondent, as judge of the Circuit Court of Jefferson County, Alabama requiring him to set aside and hold for naught an order made by said respondent in said cause on July 26, 1972, in which he enjoined the petitioners and others acting in concert with them from doing anything further with the "custodial arrangements of the minor child involved

in this matter known as 'Thomas Hawk,' including any purported adoption proceedings."

We consider a chronological recitation of the events leading up to the present action in this court to be helpful in understanding the matter now before us.

On April 6, 1972 the Family Court of Jefferson County, Alabama rendered an order or decree awarding the care and custody of an unnamed male infant otherwise known as Thomas Hawk "to the Alabama State Department of Pensions and Security for permanent placement or adoption."

Prior to this decree the child, Thomas Hawk, had been in the temporary care and custody of Horace E. Levan and wife, Virginia Levan, as paid boarding home parents. An agreement was entered into by these people with the State Department of Pensions and Security that they would care for the child for as long as he was in their custody. They specifically agreed that they would not interfere in the disposition of the child or attempt to adopt it. The child had been with the boarding home parents about three years prior to the order of April 6, 1972.

On May 5, 1972 the child, Thomas Hawk, was removed from the boarding parents' home by agents of the permanent custodian of the child, i. e., agents of the Alabama Department of Pensions and Security.

Subsequent to May 5, 1972 the boarding home parents filed in the Circuit Court of Jefferson County, Alabama, in Equity, Case No. 172–809, a petition for the writ of habeas corpus to have the child returned to them. After hearing the matter the court entered a decree holding that the Circuit Court was without jurisdiction; that jurisdiction was in the Family Court of Jefferson County, Alabama; and further that if the Circuit Court had jurisdiction, venue was misplaced as it would

properly be in Montgomery County, Alabama. There was filed an application for rehearing.

On July 26, 1972 there was filed in the Circuit Court of Jefferson County, Alabama, in Equity, Case No. 173–422, a bill of complaint by Thomas Hawk through his next friend, Chriss Doss, against the persons and entity listed in the caption to this proceeding as petitioners. The Honorable Chriss Doss is a member of the Alabama Bar practicing in Birmingham and was the attorney for the Levans in Case No. 172–809.

The bill of complaint appears to be in two aspects: one seeking the custody of the child for the Levans and the other in the nature of a bill of review to have set aside on the ground of fraud the decree of the Family Court awarding custody to the Alabama Department of Pensions and Security.

On July 18, 1972 the respondent here, Judge William C. Barber, entered an order in Case No. 172–809 staying the petitioners here from doing anything, including any purported adoption proceedings, that would affect the custodial arrangements of Thomas Hawk.

On July 26, 1972 Judge Barber entered an order in Case No. 173–422 ordering petitioners here to return the child, Thomas Hawk, to the care and custody of the Levans and enjoining the petitioners from interfering with such custody.

Thereupon petitioners filed on August 8, 1972 a special motion to vacate the stay order and a special plea in abatement questioning jurisdiction of the Circuit Court. There has been no ruling on the motion to vacate or the plea in abatement.

Petitioners, after, as they contend, being refused a hearing on the special motion and plea by respondent, filed in this court on August 14, 1972 a petition seeking a

writ of prohibition or mandamus or other extraordinary relief. At the same time petitioners filed a petition in this court seeking a stay of the proceedings in the Circuit Court until such time as this court could consider their petition for extraordinary relief. We granted the stay order on August 14, 1972.

On August 14, 1972 this court issued the rule nisi to Judge Barber to show cause, if any he had, why the relief prayed for should not be granted. On September 13, 1972 Judge Barber filed a demurrer, answer and return. On October 12, 1972, petitioners filed their replication to the answer and return.

The facts in the case show that the child in question shortly after its birth became, upon request of the mother, a ward of the Family Court of Jefferson County, Alabama or its predecessor. The Family Court through its agents placed the child with the Levans as boarding home parents until some final disposition could be made of the child.

On April 6, 1972 the Family Court gave the Alabama Department of Pensions and Security the custody and care of the child and directed that he be permanently placed or put out for adoption. Pursuant to that order the Department took the child from the boarding home parents and, as alleged in answer and return, placed him with a family for adoption.

Upon learning that the child would be permanently taken from their care, the Levans filed a petition in the Circuit Court seeking a writ of habeas corpus for the return of the child. The Circuit Court of Jefferson County found that it had no jurisdiction to entertain the petition and dismissed it. The court also stated that if it had jurisdiction, venue would be in the Circuit Court of Montgomery County, Alabama

There was an application for rehearing filed in that case which, so far as we know, has never been ruled on by the Circuit Court. However, in connection with the application for rehearing, there was issued a stay order prohibiting anyone from further interfering with the custody of said child.

After issuing the stay order Judge Barber set Case No. 173–422 down for hearing on its merits.

The petitioners here then filed in said case a special appearance raising the question of jurisdiction of the Circuit Court to decide the question of custody of Thomas Hawk. According to petitioners, Judge Barber refused to rule on the question of jurisdiction and has insisted on deciding the matter on its merits. The respondent judge in brief has stated that he did not make a permanent refusal to consider the special pleadings.

After a careful consideration of the pleadings and briefs and oral arguments in this case, we come to the inescapable conclusion that the decisive question before us, as was before the Circuit Court, is one of jurisdiction, i. e., does the Circuit Court of Jefferson County, in Equity, have jurisdiction to entertain a proceeding seeking the custody of a minor child under the circumstances here present or to review the decision of the Family Court of Jefferson County on the ground that said decision was obtained by fraud.

We will consider first the jurisdiction of the Circuit Court to decide the question of custody of Thomas Hawk.

■ The Supreme Court has said in those instances where the question of jurisdiction of a court to decide a matter has arisen that the court first taking notice of the controversy has the exclusive right to exercise jurisdiction to a final determination of the said matter including the enforcement of its decrees. Ex parte Burch, 236 Ala. 662, 184 So. 694.

■ It is understood that the circuit court in equity has the inherent power and jurisdiction to determine the custody of minor children. Whitfield v. Saulsberry, 247 Ala. 690, 26 So.2d 93. It is also understood that the legislature has the authority to confer on other courts the equivalent jurisdiction of the circuit courts, so long as they are not supplanted by such other courts. Whitfield v. Saulsberry, *supra.*

The legislature has created the Family Court of Jefferson County for the purpose, among others, of providing for the custody and care of dependent children. See Title 13, Section 125(47m)(5) and Title 62, subdivisions 11 and 12, Code of Alabama 1940, as Recompiled 1958. A pertinent portion of that court's authority is as follows:

"Section 291. The juvenile and domestic relations court shall have and exercise original and exclusive jurisdiction, . . . involving: (1) the disposition, custody, control, or protection of delinquent, dependent, or neglected children; . . . (9) bills, petitions or writs involving the custody of minors; . . . ."

"Section 317. . . . [A]nd no commitment of any child to any institution or other custodial agency shall deprive the court of the jurisdiction to change the form of the commitment or transfer the custody of said child to some other institution or agency on such conditions as the court may see fit to impose, the duty being constant upon said court to give such child, subject to its jurisdiction, such oversight and control as may conduce to the welfare of said child, and the best interests of the state; and said court may, at any time by order entered upon the records of said court release or discharge any such child from custody or control in which it may be at such time, subject to be retaken and put into control and custody on failure to comply with the terms and conditions that may be prescribed in said order by the court; provided, however, that any modification of any order of said court, made in the exercise of its guardianship over such child, ex mero motu, and without notice, as provided for in this subdivision, shall be subject to review, on the petition of any party in interest, who feels aggrieved thereby. Such petition shall be filed with the register or clerk of said court within ten days from the time such modification order is entered, and not thereafter. An appeal may be taken from the decree on such petition, as in other cases. . . ."

In Tittle v. Holt, 252 Ala. 388, 41 So.2d 203, the Supreme Court decided that the Juvenile and Domestic Relations Court of Jefferson County, the predecessor of the present Family Court of Jefferson County, apparently had concurrent jurisdiction with the Circuit Court of Jefferson County, in Equity, as regards the custody of certain minor children. That court also said that the court first exercising jurisdiction in a certain matter did so to the exclusion of the other; and when either court exercised its jurisdiction by making an award of custody, a request for a change in that custody would ordinarily be made to the same court. However, it was further stated that there is an exception to this rule. If one court has properly taken jurisdiction in a matter, and another court with equal authority is called upon to act in the same matter, the second court may do so if the parties willingly submit to its jurisdiction without objection.

In the instant case objection was made to the jurisdiction of the second court; hence this exception to the rule is not applicable.

We said in English v. Macon, 46 Ala. App. 81, 238 So.2d 733, that juvenile courts, acting pursuant to the authority given them by Title 13, Section 351, Code of Alabama 1940, as Recompiled 1958, have concurrent jurisdiction with equity courts of dependent and neglected children and that the rules pertaining to the continuing jurisdiction of equity courts in custody cases are equally applicable to juvenile courts

where the custody of neglected and dependent children is concerned.

■ The petition now before us reveals that the Family Court of Jefferson County first acquired jurisdiction of Thomas Hawk when his natural mother asked that he be made a ward of the court since she could not further care for him. The Family Court subsequently committed the child's custody to the Alabama Department of Pensions and Security for permanent placement or adoption.

Except for respondent's speculation that the child has been placed for adoption by the Department, we have nothing before us that shows that the Department has complied with the order of the Family Court other than to assume custody of said child.

It has been said that the court first assuming jurisdiction of the custodial matter retains such jurisdiction until its final order is carried out. English v. Macon, *supra*. So far as we know, the final order of the Family Court of Jefferson County has not been carried out.

We conclude then that the Family Court of Jefferson County had jurisdiction of Thomas Hawk at the time Case No. 173–422 was filed in the Circuit Court of Jefferson County, in Equity, where custody of the child was sought by the Levans.

It surely follows that the Family Court, having first acquired jurisdiction and not having lost it, was the proper forum to consider any question concerning the custody or welfare of Thomas Hawk; not the Circuit Court of Jefferson County, in Equity. Consequently, the Circuit Court was without jurisdiction to consider questions concerning the custody of the child Thomas Hawk in the present case. The Levans should have presented any questions concerning these matters to the Family Court.

The next question for our decision is whether or not the bill of complaint filed in Case No. 173–422 can be considered as a bill in the nature of a bill of review to determine whether the order of the Family Court awarding custody of Thomas Hawk to the State Department of Pensions and Security was obtained by fraud as alleged in said bill.

The nature of the fraud alleged in the bill of complaint filed in Case No. 173–422 is said to be the failure of the guardian ad litem to properly represent the minor child, Thomas Hawk. It is urged that the failure of the guardian ad litem to adequately represent the child was due, in part, to the actions of the Department in not furnishing the guardian with the correct information regarding the child. Fraud is also alleged to consist of the actions of the Department in removing the child from the physical custody of the Levans and in not giving them notice of the hearing set for the purpose of awarding custody of the child to the Department.

The prayer for relief in said bill, after praying in substance that the Circuit Court award custody of Thomas Hawk to the Levans, asked that the decree of the Family Court awarding custody of the child to anyone other than the Levans be set aside and held void.

In brief the respondent argues, essentially, that the child was denied due process in its custody hearing before the Family Court because he was denied the right to be heard in an orderly proceeding for the reason that the guardian ad litem was not given an opportunity to properly prepare himself and was misled by the erroneous statements of the agents of the Department. Respondent also argues a denial of due process because of the failure to apprise the boarding home parents of the proceeding to award permanent custody.

First we will consider the lack of notice to the Levans of the custody hearing in the Family Court.

Respondent contends that the child was denied due process when the Family Court failed to give the Levans notice of the

hearing to decide with whom his permanent custody would be placed, so that they could appear and lay claim to his custody.

The Levans were boarding home parents licensed by the Department to care for this child and other children placed with them until such time as further disposition could be made of said children. This care arrangement was temporary and the Levans understood that such custody would be temporary as evidenced by the language of the agreement they entered into with the Department, wherein it was provided:

"7. That the supervising agency has full responsibility for making and carrying out any and all plans for the children pertaining to adoption, transfer to other homes, return to relatives, etc., without interference on our part.

"8. That we will not file a petition in the court to adopt a child in our home, or take any steps toward the adoption of the child, without the written consent of the Department of Pensions and Security."

■ It is clear that the Levans were not the natural parents of Thomas Hawk, nor were they related to him in anywise, nor had they made any claim to him by adoption or otherwise; consequently, they were not in that relationship with the child that would authorize or require that they be given notice of any proceeding relating to the child, Thomas Hawk. English v. Macon, *supra*. Hence, failure to notify them of the April 6, 1972 hearing was not error and did not violate any due process rights of the child.

Secondly, as to the guardian ad litem appointed by the Family Court to represent the child being misled or deceived as to his duties by the agents of the Department, it should be noted that a guardian ad litem is required to be appointed by the Family Court only when that court makes the initial decision that a child is neglected or dependent and should be made a ward of the court. Thereafter, the child being a ward of the Family Court, the court is authorized and required to do what is in the best interests of the child. In Title 62, Section 317, Code of Alabama 1940, as Recompiled 1958, it is provided:

". . . [A]nd any order or judgment of the court in the case of any such child made in the exercise of its said guardianship shall be subject to modification from time to time, ex mero motu, and without notice, as the court may consider best for the welfare of such child, . . .."

■ Obviously, it was intended by the legislature that once the decision is made to accept a child as a ward of the court, any further action as to where the child should be placed devolves solely on the court. It can place the child wherever it wishes so long as it is, in the opinion of the court, in the best interests of the child.

In the instant case, however, the Family Court, before it made its decision to place permanent custody of Thomas Hawk, appointed a guardian ad litem to represent him at a hearing called for that purpose. For aught appearing, the guardian adequately represented the child, and the allegations of the bill of complaint filed in the Circuit Court in Case No. 173–422 do not change this presumption.

■ The rule is that a bill in the nature of a bill of review filed for the purpose of having a decree or judgment set aside because it was procured by fraud must establish that such fraud was extrinsic or collateral as distinguished from intrinsic fraud. May v. Credit Industrial Co., 271 Ala. 298, 123 So.2d 114.

In Graham v. Graham, 251 Ala. 124, 36 So.2d 316, it was decided that:

"Fraud has been regarded as intrinsic, within the meaning of this rule, where the fraudulent acts pertain to an issue involved in the original action, or where the acts constituting the fraud were, or could have been, litigated therein."

From the Family Court's decree, it appears that said court's action in awarding permanent custody of the child to the State Department of Pensions and Security was triggered by the natural mother's relinquishment of custody and control over Thomas Hawk. For aught that appears this was what the Family Court had been waiting for before it permanently placed Thomas Hawk. The decision to permanently place the custody of the child was the issue before the Family Court on April 6, 1972, and any action on the part of the Department to influence the Family Court would have been made at that time. Such fraudulent acts, if in fact they were, would have related to the very issue before the Family Court, i. e., to permanently place the custody of the child. Such fraud would be intrinsic.

Furthermore, in order to establish the necessary fraud to support a bill in the nature of a bill of review, there was an attempt to aver that there had been an intentional concealment of a material and controlling fact for the explicit purpose of misleading the other party.

In the Family Court proceeding, there was only one party—the child Thomas Hawk. The Department of Pensions and Security was only an agent of the court for the purpose of carrying out its directives regarding the care of the child.

The Family Court, upon being informed that Thomas Hawk's natural mother had given her consent for his adoption, proceeded to place his permanent custody in the State Department of Pensions and Security for placement or adoption. The purpose of such an order strikes us an implementation of a desire on the part of the court to assure Thomas Hawk that he will have a permanent home. Prior to this he had been in a temporary haven, a way station in the long journey to a permanent home. It appears that the Levans were good boarding home parents and made the child a part of their family for the time that he was with them. And, it is only natural for people who give of themselves, as the Levans apparently did, to become attached to the recipient of their care and attention. This is the difficulty of taking care of neglected and dependent children. For those who perform this needful and worthwhile function for our juvenile courts, it oftentimes means heartbreak of the tenderest kind. But it must be recognized that when one undertakes this beneficent work, as did the Levans, it is very possible that the emotions can be deeply affected.

As exemplified by their agreement with the State Department of Pensions and Security, the Levans understood that they were only a temporary haven of refuge for Thomas Hawk.

It was for the Family Court to decide what disposition should be made of Thomas Hawk, and it exercised its authority by giving the Department custody so that agency could permanently place him. The Levans or the child's next friend should have presented their knowledge or objections to that court.

The allegations in the bill of complaint filed in Circuit Court Case No. 173–422 do not sufficiently show that extrinsic or collateral fraud infected the judgment of the Family Court placing custody of Thomas Hawk in the State Department of Pensions and Security. Such an omission is fatal to a bill in the nature of a bill of review; no cause of action having been stated, there is no equity in the bill and without equity the Circuit Court is without jurisdiction.

The Circuit Court of Jefferson County, Alabama, in Equity, was without jurisdiction in the matter presented by Case No. 173–422, and it should have granted the special pleadings filed by the petitioners here or dismissed said bill of complaint ex mero motu as we suggested in English v. Macon, *supra*.

The Writ of Prohibition will issue as requested to prohibit the respondent from enforcing that certain "stay order" entered

in said cause on July 18, 1972 and that order entered on July 26, 1972; and from proceeding any further with its efforts to remove the custody of Thomas Hawk from the Alabama Department of Pensions and Security.

Writ of prohibition granted.

WRIGHT, P. J., and HOLMES, J., concur.